## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CONSTITUTION PARTY OF PENNSYLVANIA, THE GREEN PARTY OF PENNSYLVANIA, THE LIBERTARIAN PARTY OF PENNSYLVANIA, JOE MURPHY, JAMES N. CLYMER, CARL J. ROMANELLI, THOMAS ROBERT STEVENS and KEN KRAWCHUK, | ) ) ) ) ) ) ) |
| Plaintiffs, | )   Civil No. _____ |
| v. | ) ) ) |
| CAROL AICHELE, JONATHAN M. MARKS and LINDA L. KELLY, | ) ) ) |
| Defendants. | ) |

### COMPLAINT

Plaintiffs Constitution Party of Pennsylvania ("CPPA"), Green Party of Pennsylvania ("GPPA"), Libertarian Party of Pennsylvania ("LPPA"), Joe Murphy, Carl J. Romanelli, Thomas Robert Stevens, James N. Clymer, and Ken Krawchuk file this Complaint against Defendants Carol Aichele, Secretary of the Commonwealth of Pennsylvania, Jonathan M. Marks, Commissioner of the Bureau of Commissions, Elections and Legislation, and Linda L. Kelly, Attorney General of Pennsylvania, in their official capacities only. Plaintiffs allege that Pennsylvania's ballot access scheme violates rights guaranteed to them by the First and Fourteenth Amendments of the United States Constitution, by forcing them to assume the risk of incurring substantial financial burdens if they defend nomination petitions they are required by law to submit. Plaintiffs specifically allege that 25 P.S. § 2911(b), the

provision requiring the submission of nomination petitions, and 25 P.S. § 2937, the provision authorizing the imposition of costs against candidates who defend such petitions, are unconstitutional as applied to them.[1] Plaintiffs further allege that Section 2937 is unconstitutional on its face. Plaintiffs seek prospective declaratory relief and prospective injunctive relief only.

In support of this Complaint, Plaintiffs submit the following, which are attached hereto as Exhibit A: First Declaration of Joe Murphy ("Murphy Dec."); First Declaration of James N. Clymer ("Clymer Dec."); First Declaration of Hillary Kane ("Kane Dec."); First Declaration of Carl Romanelli ("Romanelli Dec."); First Declaration of Melvin Packer ("Packer Dec."); First Declaration of Christina Valente ("Valente Dec."); First Declaration of Bob Small ("Small Dec."); First Declaration of Michael Robertson ("Robertson Dec."); First Declaration of Thomas Robert Stevens ("Stevens Dec."); First Declaration of Ken Krawchuk ("Krawchuk Dec."); First Declaration of Douglas Jamison ("Jamison Dec."); First Declaration of Marakay Rogers ("Rogers Dec."); and First Declaration of Kat Valleley ("Valleley Dec.").

**PARTIES**

1.      Plaintiff Constitution Party of Pennsylvania is the Pennsylvania state affiliate of the national Constitution Party, which was formed in 1992 under the name "U.S. Taxpayers Party," and formally recognized by the Federal Election Commission as a national political party in 1995. CPPA's mission is to elect candidates at all levels of government who will uphold the principles of the

---

1  All Pennsylvania statutes are cited herein by reference to Purdon's Pennsylvania Statutes.

Declaration of Independence and the Constitution of the United States. CPPA was recognized as a minor political party under Pennsylvania law from 1994 through 2004, by virtue of having a candidate who polled the requisite number of votes in the previous general election. 25 P.S. § 2831(a). CPPA lost its status as a minor party following the 2006 general election, and is now designated as a political body. CPPA maintains a business address in Lancaster County, Pennsylvania.

2.      Plaintiff Green Party of Pennsylvania is a member of the Green Party of the United States, a coalition of 33 state parties established in 2001. GPPA's mission is to elect candidates at all levels of government who support its ten key values: Grassroots Democracy; Social Justice and Equal Opportunity; Ecological Wisdom; Nonviolence; Decentralization; Community-Based Economics and Economic Justice; Feminism and Gender Equity; Respect for Diversity; Personal and Global Responsibility; and Future Focus. GPPA achieved minor party status in the 2002 and 2004 election cycles by virtue of having a candidate in the preceding general election who polled the number of votes required by Section 2831(a). GPPA lost its status as a minor party following the 2006 general election, and is now designated as a political body. GPPA maintains a business address in Dauphin County, Pennsylvania.

3.      Plaintiff Libertarian Party of Pennsylvania is the Pennsylvania state affiliate of the national Libertarian Party, which was founded in 1971 and is the third largest political party in the nation. LPPA's mission is to elect candidates at all

3

levels of government who support maximization of civil and economic liberty by shrinking Pennsylvania's state government to its true constitutional limits. LPPA achieved minor party status in the 1992, 2002, 2004 and 2008 election cycles by virtue of having a candidate in the preceding general election who polled the number of votes required by Section 2831(a). LPPA lost its status as a minor party following the 2010 general election, and is now designated as a political body. LPPA maintains a business address in Dauphin County, Pennsylvania.

4.      Plaintiff Joe Murphy resides in Pennsylvania, and files suit in his capacity as a voter-supporter and chairman of CPPA. Plaintiff Murphy has a duty to build support and membership for CPPA, and to recruit candidates to run as nominees of CPPA.

5.      Plaintiff James N. Clymer resides in Pennsylvania and files suit in his capacity as a voter-supporter and member of CPPA who intends to seek public office in future elections as a nominee of CPPA. Plaintiff Clymer also served as chairman of the national Constitution party from 1999 to April 21, 2012.

6.      Plaintiff Carl J. Romanelli resides in Pennsylvania and files suit in his capacity as a voter-supporter and chairman of GPPA. Plaintiff Romanelli has a duty to build support and membership for GPPA, and to recruit candidates to run as nominees of GPPA. Plaintiff Romanelli also files suit in his capacity as as a former candidate of GPPA who previously incurred costs pursuant to Section 2937, and who intends to seek public office as a nominee of GPPA in future elections.

4

7.     Plaintiff Thomas Robert Stevens resides in New York and files suit in his capacity as chairman of LPPA. Plaintiff Stevens has a duty to build support and membership for LPPA, and to recruit candidates to run as nominees of LPPA.

8.     Plaintiff Ken Krawchuk resides in Pennsylvania and files suit in his capacity as a voter-supporter and former candidate of LPPA, who intends to seek public office as a nominee of LPPA in future elections.

9.     Defendant Carol Aichele is Secretary of the Commonwealth of Pennsylvania. Secretary Aichele is the Commonwealth's chief elections official and has ultimate authority over the enforcement of the Pennsylvania Election Code, including the provisions challenged herein. Plaintiffs assert their claims against Secretary Aichele in her official capacity only. Secretary Aichele's address is One Penn Center, 2601 North 3rd Street, Harrisburg, PA, 17110.

10.     Defendant Jonathan M. Marks is Commissioner of the Pennsylvania Bureau of Commissions, Elections and Legislation. Commissioner Marks oversees the Commonwealth's electoral process, campaign finance, voter registration and office of notary public, commissions and legislation. Plaintiffs assert their claims against Commissioner Marks in his official capacity only. Commissioner Marks' address is 210 N. Office Building, Harrisburg, Pennsylvania, 17120.

11.     Defendant Linda L. Kelly is Attorney General of the Commonwealth of Pennsylvania. Attorney General Kelly is the chief legal and law enforcement officer of the Commonwealth. Plaintiffs assert their claims against Attorney General Kelly

in her official capacity only. Attorney General Kelly's address is Office of Attorney

General, 16th Floor, Strawberry Square, Harrisburg, Pennsylvania, 17120.

## JURISDICTION AND VENUE

12.     Venue is proper in this Court because all Plaintiffs but one are

residents of Pennsylvania, and because the Defendants are state officials who

maintain offices in Harrisburg, Pennsylvania. This Court has personal jurisdiction

over the Defendants because they are public officials of the Commonwealth of

Pennsylvania, and because they are residents of Pennsylvania.

13.     This Court has subject matter jurisdiction over this case pursuant to

28 U.S.C. § 1331, because Plaintiffs' claims arise under the First and Fourteenth

Amendments of the United States Constitution and 42 U.S.C. § 1983.

## FACTUAL BACKGROUND

### The Pennsylvania Election Code

14.     The Pennsylvania Election Code defines a political party as:

Any party or political body, one of whose candidates at the general election
next preceding the primary polled in each of at least ten counties of the State
not less than two percentum of the largest entire vote cast in each of said
counties for any elected candidate, and polled a total vote in the State equal
to at least two per centum of the largest entire vote cast in the State for any
elected candidate.

25 P.S. § 2831(a).

15.     Pennsylvania law further defines and distinguishes a minor party as a:

political party . . . whose State-wide registration is less than fifteen per
centum of the combined State-wide registration for all State-wide political
parties as of the close of the registration period immediately preceding the

6

most recent November election.

25 P.S. § 2872.2.

16.      Political parties not designated as minor parties place their candidates on Pennsylvania's general election ballot by means of publicly-financed primary elections. 25 P.S. § 2862. The winner of the primary election automatically appears on the general election ballot. 25 P.S. § 2882.

17.      The Republican and Democratic parties are the only political parties in Pennsylvania not designated as minor parties. Therefore, they are the only parties permitted to hold publicly-financed primary elections pursuant to Section 2862.

18.      The candidates of all other political bodies or parties, including those nominated by Plaintiffs CPPA, GPPA and LPPA, and all independent candidates, may appear on Pennsylvania's general election ballot only if they submit nomination petitions with signatures of qualified electors equal in number to two percent of the entire vote cast for any candidate elected to statewide office in the preceding general election. 25 P.S. 2911(b).

19.      To place their nominees for statewide office on the ballot pursuant to Section 2911(b), Plaintiffs CPPA, GPPA and LPPA were required to submit 25,697 valid signatures in 2004. In 2006, they needed 67,070 valid signatures; in 2008, they needed 24,666; in 2010, they needed 19,056; and in 2012, they needed 20,601.

20.      By contrast, candidates who seek to appear on the Republican or Democratic primary election ballot must submit, at most, only 2,000 valid

7

signatures. 25 P.S. § 2872.1.

21.    Candidates (except those for local office) must submit the nomination petitions required by Section 2911(b) to the Secretary of the Commonwealth. 25 P.S. § 2913(a). The Secretary must examine the nomination petitions and reject them if they contain material errors or defects apparent on their face, if they contain material alterations made without the signers' consent, or if they lack the number of signatures required by Section 2911(b), among other reasons. 25 P.S. § 2936. In determining whether the nomination petitions contain the number of signatures required by Section 2911(b), the Secretary may review the signatures and disregard any deemed not to be genuine. *Id.*

22.    Nomination petitions accepted by the Secretary of the Commonwealth are deemed valid unless a private party files a petition challenging them and asking that they be set aside. 25 P.S. § 2937. When such a challenge is filed, a court must determine whether the nomination petitions comply with the provisions of Section 2936, and whether they contain the number of valid signatures required by Section 2911(b). *Id.* Section 2937 further provides that "the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just." *Id.* The full text of Section 2937 is attached hereto as Exhibit B.

## Section 2911(b) and Section 2937 as Applied to Plaintiffs

23.    Plaintiffs CPPA, GPPA and LPPA were all qualified minor parties in 2002, 2004 and 2006, because each party had a candidate on the preceding general

election ballot who polled the number of votes required by Section 2831(a). *See* Clymer Dec. ¶ 5; Kane Dec. ¶ 4; Robertson Dec. ¶ 4.

24. Following the 2004 election, two independent candidates were ordered to pay $81,102.19 in costs to the parties who challenged their nomination petitions pursuant to Section 2937. *See In re: Nomination Paper of Ralph Nader*, 905 A.2d 450 (Pa. 2006). Although Section 2937 was enacted in 1937, Plaintiffs are unaware of any prior reported case in which a candidate was ordered to pay costs under the statute.

25. In the 2006 election, the threat of incurring costs pursuant to Section 2937 caused several minor party candidates either to withhold or withdraw the nomination petitions required by Section 2911(b). Such candidates include Hagan Smith, Plaintiff CPPA's nominee for Governor; Marakay Rogers and Christina Valente, Plaintiff GPPA's nominees for Governor and Lieutenant Governor, respectively; and Plaintiff Krawchuk, Plaintiff LPPA's nominee for U.S. Senate. *See* Clymer Dec. ¶ 6; Murphy Dec. ¶ 6; Kane Dec. ¶ 8; Valente Dec. ¶ 5; Robertson Dec. ¶ 5; Krawchuck Dec. ¶ 5.

26. Only one minor party candidate for statewide office in 2006, Plaintiff Romanelli, Plaintiff GPPA's nominee for U.S. Senate, was willing to submit and defend the nomination petitions required by Section 2911(b). Plaintiff Romanelli did so based on his good faith belief that the 93,829 total signatures he submitted satisfied Section 2911(b)'s requirement of 67,070 valid signatures. Plaintiff

Romanelli was nevertheless removed from the ballot after a challenge was filed pursuant to Section 2937, and then ordered to pay his challengers $80,407.56 in costs and fees. *See* Romanelli Dec. ¶ 5.

27.     Because no minor party candidate for statewide office appeared on Pennsylvania's 2006 general election ballot, Plaintiffs CPPA, GPPA and LPPA all lost their status as qualified minor parties following the 2006 election.

28.     During the 2008 election, then-Attorney General and current Governor Tom Corbett was conducting a criminal investigation into the misuse of taxpayer funds and resources for private political purposes, including the illegal preparation of the challenges to the Nader-Camejo 2004 and GPPA 2006 nomination petitions. See Kane Dec. ¶ 10; Romanelli Dec. ¶ 6.

29.     While the criminal investigation was ongoing, Plaintiff LPPA submitted nomination petitions with more than the 24,666 signatures required by Section 2911(b) in 2008. No challenge was filed pursuant to Section 2937, and LPPA's candidates appeared on the 2008 general election ballot. LPPA thus regained minor party status pursuant to Section 2831(a). *See* Robertson Dec. ¶ 6.

30.     Although Plaintiffs CPPA and GPPA regularly complied with Section 2911(b) in the preceding election cycles, they were unable to do so in 2008, primarily because their supporters were unwilling to devote time and resources to a petition drive that might result in a substantial assessment of costs against their nominees. *See* Clymer Dec. ¶ 7; Murphy Dec. ¶ 7; Kane Dec. ¶¶ 11, 13-15; Romanelli Dec. ¶ 10.

10

31.     By 2010, then-Attorney General Corbett's criminal investigation had apparently concluded, following the felony convictions or guilty pleas of multiple defendants, and the filing of nomination petition challenges pursuant to Section 2937 resumed. Democratic candidates or their allies filed challenges against Plaintiff GPPA and its 2010 nominees, while Republican candidates or their allies filed challenges against Plaintiff LPPA and its 2010 nominees. In some cases, the challengers made explicit threats to seek costs pursuant to Section 2937, unless Plaintiffs immediately withdrew their nomination petitions.

32.     For example, after challenging Plaintiff LPPA's nomination petitions pursuant to Section 2937, an attorney representing three voters aided by and affiliated with the Pennsylvania Republican Party explicitly threatened to seek "$92,255 to $106,455" in fees and costs if Plaintiff LPPA and its nominees did not immediately withdraw their nomination petitions.

33.     On August 16, 2010, the Republican challengers' attorney sent Plaintiff LPPA's attorney an email stating the following:

> Following up on our conversation earlier this evening, I do not have exact figures on what our costs will be if this signature count continues and my clients are required to complete the review and/or move forward with a hearing. However, a rough estimate would be $92,255 to $106,455 which would include costs such as legal fees, travel and lodging, compensable time for reviewers/support staff, process servers' fees and expenses, hearing preparation, lay and expert witness fees and costs, photocopies, meals, legal research and conference call expenses, to name a few. These costs are comparable to the costs awarded in recent years by the Commonwealth Court in similar nomination paper challenges, including *In re: Nomination Papers of Nader* and *In re: Nomination Papers of Rogers (Romanelli)* which, as you know, were assessed not only against the candidates but also their lawyers

and their law firms.

Please let me know if you need any further information in order to discuss with your clients a withdrawal of their candidacy for Governor, Lieutenant Governor and United States Senator. As I stated, the sooner that your clients agree to withdraw, the more likely my clients will agree to not pursue recovery of all their costs incurred in pursuing this matter.

*See* Robertson Dec. ¶ 9.

34.     As a result of this threat, and on the advice of counsel, Plaintiff LPPA and its nominees withdrew their nomination petitions the next day, August 17, 2010. They did so despite their belief that the petitions included more than the 19,056 valid signatures required by Section 1911(b), because they were unable to assume the risk of incurring costs pursuant to Section 2937. *See id.* ¶¶ 8-10; Rogers Dec. ¶¶ 5-6; Valleley Dec. ¶¶ 5-6; Jamison Dec. ¶¶ 5-6.

35.     Similarly, Melvin Packer, Plaintiff GPPA's 2010 nominee for U.S. Senate, withdrew his nomination petitions after Joe Sestak, the 2010 Democratic nominee for U.S. Senate, challenged them pursuant to Section 2937. Mr. Packer did so despite his belief that the petitions included more than the 19,056 valid signatures required by Section 2911(b), because he was unable to assume the risk of incurring costs pursuant to Section 2937. *See* Packer Dec. ¶¶ 4-6.

36.     On August 13, 2010, Mr. Packer filed a letter withdrawing his nomination petitions, which stated his belief that he had "no other choice," due to the "financial risks" he faced if he defended Mr. Sestak's challenge and incurred costs pursuant to Section 2937. *See id.* ¶ 7.

12

37.     Plaintiff CPPA's 2010 nominee for Governor, John Krupa, also declined to submit his nomination petitions, in order to avoid the threat of incurring costs pursuant to Section 2937. *See* Clymer Dec. ¶ 6. Nomination petition challenges were also filed against "tea party" and independent candidates in 2010, causing them to withdraw rather than assume the risk of incurring such costs. As a result, no candidate for statewide office, except the Republican and Democratic nominees, appeared on Pennsylvania's 2010 general election ballot.

38.     On March 29, 2011, the Supreme Court of Pennsylvania clarified the proper standard for the assessment of costs pursuant to Section 2937. *See In Re Nominate Paper of Farnese*, 17 A.3d 357 (Pa. 2011). Expressly rejecting the "heightened rule" that costs may be assessed only where a party is found to have engaged in "fraud, bad faith, intention, or gross misconduct," the Court concluded that "the plain language of [Section 2937] does not establish such a high threshold." *Id.* at 371-72. Instead, the Court held that Section 2937 authorizes the assessment of costs whenever it would be "just," based on "the particular facts, the nature of the litigation, and other considerations as may appear relevant." *Id.* at 370-72.

39.     Because the Republican and Democratic nominees are guaranteed placement on the general election ballot once they win their party's publicly-financed primary, 25 P.S. §§ 2862, 2882, Plaintiffs cannot challenge their nomination and force them to assume the risk of incurring costs pursuant to Section 2937. Only minor parties and independents, such as Plaintiffs, must assume that risk.

13

**Injury to Plaintiffs**

40.     The application of Section 2911(b) and Section 2937 has severely impacted Plaintiffs and continues to impose severe burdens on them.

41.     Plaintiffs and their nominees have been compelled under financial duress to withdraw nomination petitions submitted under Section 2911(b), despite their good faith belief the petitions included enough valid signatures, because they cannot afford to assume the risk of incurring costs pursuant to Section 2937. *See* Murphy Dec. ¶¶ 6-8; Clymer Dec. ¶¶ 6-8; Kane Dec. ¶¶ 7-8, 12; Romanelli Dec. ¶¶ 4, 11; Packer Dec. ¶¶ 6-7; Valente Dec. ¶¶ 4-5; Small Dec. ¶ 5; Robertson Dec. ¶¶ 5, 8-10; Stevens Dec. ¶ 5; Krawchuk Dec. ¶¶ 5-6; Jamison Dec. ¶¶ 5-6; Rogers Dec. ¶¶ 5-6; Valleley Dec. ¶¶ 5-6. The challenged provisions have thus prevented Plaintiffs from participating freely in Pennsylvania's past elections.

42.     Plaintiffs CPPA, GPPA and LPPA each have member-supporters who want to seek public office as their nominees in future elections, including but not limited to 2012, but who cannot afford to incur costs pursuant to Section 2937. *See* Murphy Dec. ¶ 7; Clymer Dec. ¶ 7; Romanelli Dec. ¶ 10; Stevens Dec. ¶¶ 6-7; Krawchuck Dec. ¶ 6; Jamison Dec. ¶ 7; Rogers Dec. ¶ 8; In addition, member-supporters of CPPA, GPPA and LPPA are increasingly reluctant to dedicate the time and resources necessary to conduct a successful petition drive, because they know that the filing of a challenge pursuant to Section 2937 may force the petitions to be withdrawn, whether or not they include enough valid signatures to comply with

14

Section 2911(b). *See* Murphy Dec. ¶ 7; Clymer Dec. ¶ 7; Kane Dec. ¶¶ 11. 13-15; Romanelli Dec. ¶ 10; Small Dec. ¶¶ 4-6; Robertson Dec. ¶ 12; Stevens Dec. ¶ 7. The threat of incurring such costs thus interferes with Plaintiffs' free participation in Pennsylvania's future elections.

43.     Because Pennsylvania law provides no alternative means for Plaintiffs CPPA, GPPA and LPPA to place their nominees on the general election ballot, Section 2911(b) and Section 2937 interfere with their core functions of presenting their candidates to the electorate and building support for their party's platform, and with Plaintiffs' goal of building viable minor political parties. *See* Murphy Dec. ¶ 9; Clymer Dec. ¶ 9; Kane Dec. ¶ 15; Romanelli Dec. ¶ 10; Robertson Dec. ¶ 12; Stevens Dec. ¶¶ 6-7.

44.     Plaintiffs Clymer, Romanelli and Krawchuk each want and intend to seek public office as nominees of their respective parties in future elections, by submitting nomination petitions as required by Section 2911(b), but the imposition of costs against them pursuant to Section 2937 would constitute a substantial or severe financial burden. *See* Clymer Dec. ¶¶ 7-8; Romanelli Dec. ¶¶9-10; Krawchuk Dec. 6-7.

45.     Plaintiff Romanelli has already incurred more than $80,000 in costs pursuant to Section 2937, following a challenge to his nomination petitions as Plainitff GPPA's 2006 nominee for U.S. Senate. *See* Romanelli Dec. ¶¶ 5-9.

46.     On or about May 11, 2012, Plaintiff LPPA's nominee for state

15

Treasurer, Roy Minet, informed LPPA that he was withdrawing from the race, because he was unwilling to assume the risk of incurring costs pursuant to Section 2937. LPPA had already collected approximately 22,000 signatures on Mr. Minet's nomination petitions – more than the number required by Section 2911(b) – but was forced to recruit a new nominee and start the entire petition drive over.

47.    Plaintiff Krawchuk similarly withdrew as Plaintiff LPPA's 2012 nominee for Governor, because he was unwilling to assume the risk of incurring costs pursuant to Section 2937. *See* Krawchuk Dec. ¶ 7.

## COUNT I

### VIOLATION OF RIGHTS GUARANTEED BY FIRST AND FOURTEENTH AMENDMENTS

### (Request for Declaratory Judgment Pursuant to 42 U.S.C. § 1983 Holding 25 P.S. 2911(b) and 25 P.S. 2937 Unconstitutional as Applied)

48.    Plaintiffs reassert each preceding allegation as if set forth fully herein.

49.    In order to place their nominees on the general election ballot as nominees of a minor political party or political body, Plaintiffs must submit nomination petitions pursuant to 25 P.S. § 2911(b).

50.    Secretary Aichele must review the nomination petitions and reject them if they fail to fulfill certain statutory requirements, including the number of valid signatures required by Section 2911(b).

51.    If Secretary Aichele accepts nomination petitions, they are deemed valid unless a private party files a challenge pursuant to 25 P.S. § 2937.

52.     If Plaintiffs defend their nomination petitions when challenged pursuant to Section 2937, they risk being ordered to pay their challengers' costs.

53.     Twice in recent elections, costs assessed against candidates pursuant to Section 2937 have exceeded $80,000.

54.     Section 2937 permits the imposition of costs against Plaintiffs even if they are not found to have engaged in fraud, bad faith or other misconduct.

55.     Section 2911(b) and Section 2937, as applied, violate Plaintiffs' freedoms of speech, petition, assembly and association for political purposes, and their right to due process of law, as guaranteed by the First and Fourteenth Amendments, by imposing or threatening to impose substantial financial burdens on them, without limitation, if they defend nomination petitions they are required by law to submit.

56.     Such violations injure Plaintiffs.

## COUNT II

## VIOLATION OF RIGHTS GUARANTEED BY FOURTEENTH AMENDMENT

### (Request for Declaratory Judgment Pursuant to 42 U.S.C. § 1983 Holding 25 P.S. 2911(b) and 25 P.S. 2937 Unconstitutional as Applied)

57.     Plaintiffs reassert each preceding allegation as if set forth fully herein.

58.     In order to place their nominees on the general election ballot as nominees of a minor political party or political body, Plaintiffs must submit nomination petitions pursuant to 25 P.S. § 2911(b).

59.     Political parties not designated as minor parties place their nominees

17

on the general election ballot by means of publicly-funded primary elections.

60.    Only the Republican and Democratic parties are permitted to hold primary elections. The winner of the primary is automatically placed on the general election ballot.

61.    To appear on the primary election ballot, Republican and Democratic candidates for statewide office must submit at most 2,000 signatures.

62.    To place their nominees on the general election ballot pursuant to Section 2911(b) in recent years, Plaintiffs have been required to submit nomination petitions with tens of thousands of valid signatures.

63.    Private parties may challenge Plaintiffs' nomination petitions, forcing them to assume the risk of incurring costs pursuant to 25 P.S. § 2937, or to withdraw from the general election.

64.    Section 2911(b) and Section 2937, as applied, violate Plaintiffs' right to equal protection of law, as guaranteed by the Fourteenth Amendment.

65.    Such violation injures Plaintiffs.

## COUNT III

### VIOLATION OF RIGHTS GUARANTEED BY FIRST AND FOURTEENTH AMENDMENTS

### (Request for Declaratory Judgment Pursuant to 42 U.S.C. § 1983 Holding 25 P.S. 2937 Unconstitutional On Its Face)

66.    Plaintiffs reassert each preceding allegation as if set forth fully herein.

67.    In order to place their nominees on the general election ballot as

nominees of a minor political party or political body, Plaintiffs must submit nomination petitions pursuant to 25 P.S. § 2911(b).

68.     Private parties may challenge Plaintiffs' nomination petitions pursuant to 25 P.S. § 2937.

69.     If Plaintiffs defend their nomination petitions when challenged pursuant to Section 2937, they risk being ordered to pay their challengers' costs.

70.     Section 2937 authorizes the imposition of costs against candidates even if they do not engage in fraud, bad faith or other misconduct.

71.     Section 2937 chills Plaintiffs' free exercise of their rights to speech, petition, assembly and association for political purposes, by requiring them to assume the risk of incurring substantial financial burdens if they defend nomination petitions they are required to submit pursuant to Section 2911(b).

72.     The threat of incurring such financial burdens injures Plaintiffs.

### PRAYER FOR RELIEF

73.    WHEREFORE, Plaintiffs respectfully request that the Court:

A. Enter a declaratory judgment holding 25 P.S. § 2911(b) and 25 P.S. § 2937 unconstitutional as applied to Plaintiffs;

B. Enter a declaratory judgment holding 25 P.S. § 2937 unconstitutional on its face;

C. Enter an injunction enjoining Secretary Aichele, Commissioner Marks and any other official of the Commonwealth of Pennsylvania from enforcing the signature requirement imposed by 25 P.S. § 2911(b);

D. Award such other and further relief as the Court deems proper;

E. Award attorneys' fees pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

Mark R. Brown                     Oliver B. Hall*
Newton D. Baker/Baker &           Center for Competitive Democracy
Hostetler Professor of Law**      1835 16th Street NW #5
Capital University                Washington, D.C. 20009
614-236-6590 (ph)                 (202) 248-9294 (ph)
614-236-6956 (fx)                 (202) 248-9345 (fx)
MBrown@law.capital.edu            oliverhall@competitivedemocracy.org

*Counsel for Plaintiffs*

*Counsel of Record, Motion for Admission Pro Hac Vice Pending
**For Identification Purposes Only

Dated: May 16, 2012

## EXHIBIT A

**First Declaration of Joe Murphy; First Declaration of James N. Clymer; First Declaration of Hillary Kane; First Declaration of Carl Romanelli; First Declaration of Melvin Packer; First Declaration of Christina Valente; First Declaration of Bob Small; First Declaration of Michael Robertson; First Declaration of Thomas Robert Stevens; First Declaration of Ken Krawchuk; First Declaration of Douglas Jamison; First Declaration of Marakay Rogers; and First Declaration of Kat Valleley**

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE CONSTITUTION PARTY OF PENNSYLVANIA, THE GREEN PARTY OF PENNSYLVANIA, THE LIBERTARIAN PARTY OF PENNSYLVANIA, JOE MURPHY, JAMES N. CLYMER, CARL J. ROMANELLI, THOMAS ROBERT STEVENS and KEN KRAWCHUK | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. _____ |
| v. | ) ) | |
| CAROL AICHELE, JONATHAN M. MARKS and LINDA KELLY, | ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF JOE MURPHY'S FIRST DECLARATION
### (pursuant to 28 U.S.C. § 1746)

I, Joe Murphy, hereby declare as follows:

1.      I am over the age of 18 and reside in Pennsylvania.

2.      I have personal knowledge about the matters to which I attest.

3.      I am Chairman of the Constitution Party of Pennsylvania ("CPPA") and have served in that position since February 2012. I have been an active member of CPPA since 1999.

4.      CPPA was established in 1992, as the Pennsylvania state affiliate of the national Constitution Party. The Constitution Party is based on seven core principles: life, liberty, family, property, the Constitution, states' rights and American sovereignty.

5.     CPPA was a qualified minor party in the 2006 general election, by virtue of having a candidate who polled the requisite number of votes in the preceding general election. 25 P.S. § 2831(a). CPPA similarly achieved minor party status in 1994, 1996, 1998, 2000 and 2004.

6.     CPPA lost its status as a qualified minor party in Pennsylvania following the 2006 general election, because CPPA was unable to recruit any candidates who were willing to submit nomination petitions and thereby risk incurring litigation costs pursuant to 25 P.S. § 2937 ("Section 2937"). Instead, every CPPA nominee, including Hagan Smith, our nominee for United States Senate, either withdrew or refused to submit their nomination petitions.

7.     Section 2937 continues to prevent CPPA from placing candidates on Pennsylvania's general election ballot, because CPPA nominees are unwilling to defend their nomination petitions as long as the threat of incurring litigation costs remains. Further, CPPA members and supporters are unwilling to dedicate the significant time and resources necessary to satisfy Pennsylvania's petitioning requirements, when they know that CPPA's nominees will not defend their nomination petitions if doing so requires assuming the risk of incurring $80,000 or more in costs.

8.     CPPA is unable to indemnify its nominees against the threat of incurring litigation costs pursuant to Section 2937.

9.     CPPA's ability to participate in Pennsylvania's electoral process, to