**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE CONSTITUTION PARTY** | : | |
| **OF PENNSYLVANIA,** *et al*. | : | **Case No. 1:12-CV-02726** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Judge Stengel)** |
| | : | |
| **CAROL AICHELE,** *et al*. | : | |
| **Defendants** | : | |

**<u>O R D E R</u>**

     **AND NOW**, this _____ day of _____ 2012, upon consideration of Defendants' Motion to Dismiss the Complaint, Defendants' Motion is **GRANTED**.

BY THE COURT:

_____
Lawrence F. Stengel, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE CONSTITUTION PARTY** | : | |
| **OF PENNSYLVANIA,** *et al.* | : | **Case No. 1:12-CV-02726** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Judge Stengel)** |
| | : | |
| **CAROL AICHELE,** *et al.* | : | |
| **Defendants** | : | **ELECTRONICALLY FILED** |

---

### DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Defendants Carol Aichele, Jonathan Marks, and Linda Kelly, by and through their attorneys, hereby move under Rule 12(b)(1), (5), and (6) of the Federal Rules of Civil Procedure to dismiss the Complaint against them in the above captioned action.  For the reasons already found by the Court in *The Constitutional Party of Pennsylvania v. Cortes*, 5:09-cv-01691 (E.D. Pa.) (Stengel, J.), Plaintiffs lack standing to bring this action, present a case not ripe for review, fail to allege personal involvement by the defendants, and fail to state a viable cause of action upon which relief can be granted.  Additionally, Plaintiffs improperly served Defendants with a copy of the Complaint.

Pursuant to Local Rule 7.1, a memorandum of law in support of this motion is filed contemporaneously herewith.

**WHEREFORE**, Defendants respectfully move the Court to grant their Motion to Dismiss the Complaint, dismiss this action, and order the Clerk of Court to close the file.

Respectfully submitted,

**LINDA L. KELLY**
**Attorney General**

By:     *s/ Sean A. Kirkpatrick*

**SEAN A. KIRKPATRICK**
**Deputy Attorney General**
**Attorney ID 92960**

**GREGORY R. NEUHAUSER**
**Chief Deputy Attorney General**
**Chief, Civil Litigation Section**

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 783-1471**
**Fax:    (717) 772-4526**
**skirkpatrick@attorneygeneral.gov**

**Date:  July 25, 2012**

**Counsel for Defendants**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE CONSTITUTION PARTY** | : | |
| **OF PENNSYLVANIA,** *et al.* | : | |
| **PLAINTIFFS** | : | **Case No. 1:12-CV-02726** |
| | : | |
| **v.** | : | **(Judge Stengel)** |
| | : | |
| | : | |
| **CAROL AICHELE,** *et al.* | : | |
| **DEFENDANTS** | : | |
| | : | **ELECTRONICALLY FILED** |

---

**CERTIFICATE OF SERVICE**

---

I, Sean Kirkpatrick, Deputy Attorney General for the Commonwealth of Pennsylvania,

Office of Attorney General, hereby certify that on July 25, 2012, I caused to be served a true and

correct copy of the foregoing document via the Electronic Filing System to the following

individual:

Oliver B. Hall
Center for Competitive Democracy
1835 16th Street N.W.
Washington, DC 20009
*(Counsel for Plaintiffs)*

*s/ Sean A. Kirkpatrick*
**Sean A. Kirkpatrick**
Deputy Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE CONSTITUTION PARTY** | : | |
| **OF PENNSYLVANIA,** *et al.* | : | **Case No. 1:12-CV-02726** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Judge Stengel)** |
| | : | |
| **CAROL AICHELE,** *et al.* | : | |
| **Defendants** | : | **ELECTRONICALLY FILED** |

---

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS

---

Respectfully submitted,

LINDA L. KELLY
**Attorney General**

SEAN A. KIRKPATRICK
**Deputy Attorney General**
**I.D. #92960**

GREGORY R. NEUHAUSER
**Chief Deputy Attorney General**
**Chief, Litigation Section**

Office of Attorney General
15th Fl., Strawberry Square
Litigation Section
Harrisburg, PA 17120
(717) 783-1471

**DATED: July 25, 2012**

## <u>TABLE OF CONTENTS</u>

I.       PROCEDURAL HISTORY ............................................................................ 1

II.      FACTS ALLEGED IN THE COMPLAINT ............................................... 3

III.     QUESTIONS PRESENTED ....................................................................... 5

IV.      ARGUMENT ............................................................................................. 6

      A.     Plaintiffs Lack Standing To Seek Injunctive Relief ............................ 6

            1.     Injury-in-Fact ........................................................................ 6

            2.     Traceability .......................................................................... 8

            3.     Redressability ...................................................................... 8

      B.     Plaintiffs Lack Standing To Seek Declaratory Relief ......................... 9

      C.     This Matter Is Not Ripe for Adjudication .......................................... 10

      D.     The Judiciary's Possible Assessment Of Costs And Fees Against Minor Party
           Candidates Under Section 2937 (25 P.S. § 2937) Does Not Violate Their Rights
           to Equal Protection under the Fourteenth Amendment ......................... 11

      E.     The Judiciary's Assessment Of Costs And Fees Against Minor Party Candidates
           Under Section 2937 (25 P.S. § 2937) Does Not Violate Their Rights Under The
           First And Fourteenth Amendments ..................................................... 12

      F.     Plaintiffs cannot state a claim against the Defendants since they are not personally
           involved in the challenging process ................................................... 18

      G.     The Complaint Was Improperly Served ............................................. 19

V.       CONCLUSION ......................................................................................... 20

I.   **PROCEDURAL HISTORY**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality of three separate parts of the Pennsylvania Election Code governing the conduct of minor political parties, political bodies, and their candidates for public office.  The plaintiffs are the Constitution Party of Pennsylvania and its chair, Joe Murphy; the Green Party of Pennsylvania and its chair, Carl Romanelli; the Libertarian Party of Pennsylvania and its chair, Thomas Robert Stvens; James Clymer, a member of the Constitution Party of Pennsylvania, and Ken Krawchuk, a former candidate of the Libertarian Party of Pennsylvania.   (Complaint at ¶¶ 1-8)

The defendants are Carl Aichele, Secretary of the Commonwealth of Pennsylvania; Jonathan Marks, Commissioner of the Pennsylvania Department's Bureau of Commissions, Elections, and Legislation; and Linda Kelly, Attorney General of the Commonwealth of Pennsylvania.  (Complaint at ¶¶ 9-11).

In their Complaint, Plaintiffs allege that Pennsylvania's Election Code substantially burdens "minor party"[1] and "political body" candidates in two ways.  First, they allege that 25 P.S. § 2937 (Section 977 of the Election Code),[2] is unconstitutional because it permits the

---

[1]   State-wide minor political parties are political parties whose voter registration is less than 15% of the total voter registration for Pennsylvania, but who obtained at least 2% of the largest entire vote cast for a single state-wide candidate in the last preceding general election.  *See* 25 P.S. §§ 2831(a) & 2872.2.  Political organizations that do not meet this 2% threshold, as well as independent candidates, are considered "political bodies" under Pennsylvania's Election Code. None of the Plaintiff political parties meets the technical requirements to qualify as a "minor political party" at this time.  Although there are some advantages to being recognized as a "minor political party," as opposed to a "political body," the candidates of both types of political organizations must file nomination papers to be placed on the ballot. 25 P.S. §§ 2872.2 & 2911.

[2]   Plaintiffs in their complaint refer to the Election Code by the section numbers assigned in Purdon's Statutes ("P.S.").  The Election Code as enacted by the Legislature has different section

Pennsylvania courts to impose costs against political candidates who are unable to defend their nomination petitions against a challenge by a private third-party.  Plaintiffs allege that this ability to impose costs violates their First and Fourteenth Amendment rights to freedom of speech, petition, assembly and association for political purposes, and due process of law.  Plaintiffs allege that this mere possibility of the imposition of costs by the courts is unconstitutional on its face (Count III) and as applied to them (Count I).

Second, Plaintiffs allege that 25 P.S. § 2937 treats major party candidates (Democratic and Republican) differently from minor party and political body candidates.  Major party candidates have their names placed on the ballot through the primary system, whereas Plaintiffs must obtain signatures on nomination papers to be placed on the ballot.  Plaintiffs allege that this violates their equal protection rights under the Fourteenth Amendment and is unconstitutional as applied to them.  (Count II.)  Plaintiffs seek a declaration holding 25 P.S. 2911(b) and 25 P.S. § 2937 unconstitutional as applied to them; 25 P.S. § 2937 unconstitutional on its face; and an injunction enjoining Secretary Aichele and Commissioner Marks from enforcing the signature requirement imposed by 25 P.S. § 2911(b).  (Complaint at ¶ 20.)

The plaintiff political parties and their chairs already raised a similar challenge to 25 P.S. § 2937 before the Court in *The Constitutional Party of Pennsylvania v. Cortes*, 5:09-cv-01691 (E.D. Pa.) (Stengel, J.).  In that case, the Court granted Defendants' motion to dismiss after finding that Plaintiffs lacked Article III standing to raise these issues and that the case was not ripe for review.  *See The Constitutional Party of Pennsylvania v. Cortes,* 712 F.Supp.2d 387 (E.D. Pa. 2010).  In the two years since losing that case, the relevant facts have not changed in any material way.  As before, there is no pending dispute and no challenge to a nomination

---

numbers.  However, to avoid confusion and to maintain consistency with the Complaint, Defendants will refer to the Purdon's cites as appear in the statutory compilation.

paper.  Since that earlier case, there has also not been an imposition of fees against any of the

Plaintiffs.  Thus, for the reasons already found by the Court, Plaintiffs lack standing to bring this

action.  Additionally, Plaintiffs have not alleged sufficient facts to state a claim for which relief

may be granted against them.  Accordingly, Defendants have filed a motion to dismiss.  This

memorandum of law is in support of that motion pursuant to Local Rule 7.1(c).

## II.    FACTS ALLEGED IN THE COMPLAINT

Pennsylvania has a two-track system for candidates of political parties to be placed on the

General Election ballot.  The first track is for major political parties.  *See* 25 P.S. §§ 2831(a)

(defining political parties) and 2861-83 (providing for nomination of political party candidates at

primaries).  Based on voter registrations, the Democratic Party and Republican Party are the only

major political parties in Pennsylvania at this time.  The Democratic and Republican parties

generally place their candidates on the November ballot through the primary process.  25 P.S.

§§ 2861-83.

The second track for candidates to be placed on the ballot is by filing nomination papers.

All candidates who are not members of a major political party (*e.g.*, minor political parties,

political bodies, and independents) must file nomination papers to have their names placed on

the General or Municipal Election ballot.  These candidates must obtain signatures on

nomination papers equaling at least two percent of the largest entire vote cast for an elected

candidate in the state at large at the last preceding election at which statewide candidates were

voted for.  *See* 25 P.S. § 2911(b).

The first day to circulate nomination papers is the tenth Wednesday prior to the primary.[3]
*See* 25 P.S. § 2913(b).  Nomination papers must be filed on or before August 1st of each election
year.[4]  *See* Consent Decree entered in *Hall v. Davis*, No. 84-1057 (E.D. Pa.); and Consent Decree
entered in *Libertarian Party of Pennsylvania  v. Davis*, No. 84-0262 (M.D. Pa.).  After the filing
of nomination papers, private parties have seven days to file objections challenging the validity
of the signatures collected.  *See* 25 P.S. § 2937.  The Commonwealth Court of Pennsylvania then
reviews any objections and determines whether the name of the candidate should be placed on
the ballot or stricken.[5]  25 P.S. § 2937.  Any party aggrieved by the decision of Commonwealth
Court may then file an appeal as of right to the Supreme Court of Pennsylvania.  42 Pa. C.S.
§ 723(a); Pa. R.A.P. No. 1101(a)(1).

25 P.S. § 2937 provides that "[i]n case any such petition is dismissed, the court shall
make such order to the payment of the costs of the proceedings, including witness fees, as it shall
deem just."  25 P.S. § 2937.  In *In re Nader,* 588 Pa. 450, 905 A.2d 450 (2006), *cert' denied*, 549
U.S. 1117 (2007), the Pennsylvania Supreme Court applied this provision to a minor party
candidate whose nomination papers were found to be deficient and held that, under the statute,
the candidate could be assessed fees and costs incurred by the objecting parties.  Ralph Nader

---

[3]   The primary election in Presidential election years is the fourth Tuesday in April.  For non-Presidential elections, the primary is the third Tuesday in May.  *See* 25 P.S. § 2753(a).

[4]   Under the terms of 25 P.S. §§ 2913(b) and (c) (Section 953(b) and (c) of the Election Code), the filing deadline is the second Friday after the primary election.   For 2008, the filing deadline under the statute would have been Friday, May 2nd.   However, under the two consent decrees entered in *Hall v. Davis*, No. 84-1057 (E.D. Pa.) and *Libertarian Party of Pennsylvania  v. Davis*, No. 84-0262 (M.D. Pa.), the filing deadline was extended by three additional months until August 1st.

[5]   The Commonwealth Court's original jurisdiction in election matters is limited to issues relating to state offices.  42 Pa. C.S. § 764.  Objections to nomination papers for local offices are reviewed by the courts of common pleas.  42 Pa. C.S. § 931.

and his running mate were assessed fees and costs of $81,102.19 in that case.  (Complaint at ¶ 24).  After the 2006 election, Green Party Senate candidate Carl Romanelli and his legal counsel were assessed fees and costs of $80,407.56 after his nomination papers were successfully challenged in Commonwealth Court.  *In re: Rogers,* 942 A.2d 915 (Pa. Cmwlth. 2008), *aff'd*, 598 Pa. 598, 959 A.2d 903 (2008); *see also In re: Rogers*, 914 A.2d 457,463 (Pa. Cmwlth. 2007) (finding that fees were warranted as Romanelli had been disingenuous with the court and failed to comply with the court's order).  (Complaint at ¶ 26).

Plaintiffs allege that their candidates have been coerced into withdrawing their nomination papers by private third-parties who threatened to challenge the petitions and seek costs from the Commonwealth Court.  (Complaint at ¶ 33-35.)  The only two instances cited by Plaintiffs in which a state court has imposed fees under § 2937 occurred after the court found that the candidate engaged in fraud or bad faith conduct.  *See Nader,* 588 Pa. at 455; *Rogers*, 942 A.2d 928-29.  Although Plaintiffs do not allege that they planned to commit fraud or act in bad faith in connection with their nomination papers, they nevertheless allege that the mere possibility of sanctions chilled their political speech.  Notably, the minor party candidates may run for public office is as write-in candidates.  25 P.S. § 2963(a).

## III.   QUESTIONS PRESENTED

    **1.  WHETHER PLAINTIFFS LACK STANDING TO BRING THIS CASE WHERE THE COURT HAS ALREADY FOUND STANDING WANTING IN A SIMILAR ACTION?**

    **2.  WHETHER PLAINTIFFS' CLAIMS ARE NOT RIPE WHERE THE COURT HAS ALREADY FOUND A LACK OF RIPENESS IN A SIMILAR ACTION?**

    **3.  WHETHER PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED WHEN THE CHALLENGED SECTIONS OF THE ELECTION CODE DO NOT VIOLATE THE FIRST OR FOURTEENTH AMENDMENTS?**

**4.  WHETHER THE CASE MUST BE DISMISSED WHERE PLAINTIFFS FAIL TO STATE ANY PERSONAL INVOLVEMENT BY THE DEFENDANTS?**

**5.  WHETHER SERVICE BY CERTIFIED MAIL IS IMPROPER SERVICE IN PENNSYLVANIA?**

## IV.   ARGUMENT

### A.   Plaintiffs Lack Standing To Seek Injunctive Relief.

Plaintiffs are not entitled to any injunctive relief, as they lack Article III standing to bring this action.  Before the Court may proceed to the merits of any civil case, it must first determine whether Plaintiffs have standing.  *Lance v. Coffman,* 549 U.S. 437, 439 (2007); *see also Common Cause of Pennsylvania v. Pennsylvania,* 558 F.3d 249, 257 (3d Cir. 2009) ("Invoking the power of the federal judiciary requires more than important issues and able litigants" ).  Standing requires that:  (1) the plaintiff has suffered or will suffer an injury in fact; (2) that is caused by the complained-of conduct by a defendant; (3) and that can be redressed by the Court.  *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009).  The Court has already addressed this precise issue in *Constitution Party of Penn. v. Cortes*, 712 F.Supp.2d 387 (E.D. Pa. 2010), wherein the political parties *sub judice* brought an action challenging the constitutionality of 25 P.S. § 2937 under the First and Fourteenth Amendment.  In that prior case, the Court found that the minor party and political body candidates lacked standing to bring their action, as they failed to allege facts establishing either injury-in-fact, traceability, or redressability.  *Id.* at 396-398.  The Plaintiffs have not cured these failings before bringing this second action.

### 1.   Injury-in-Fact

An "injury in fact" must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Berg*, 586 F.3d at 239.  "Allegations of 'possible future injury' are not sufficient to satisfy Article III."  *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011).

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court instructed that "[a]lthough 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is '*certainly* impending.'" *Id.* at 564 n.2.  As explained by the Third Circuit, an alleged injury is too speculative where it cannot be explained without the use of the word "if." *Reilly*, 664 F.3d at 43; *see also Harris v. Corbett*, Civ. No. 1:11–CV–2228, 2012 WL 1565357 at *9-10 (M.D. Pa. May 2, 2012) (Jones, J.).

Here, Plaintiffs fail to allege a threat of injury that is actual or imminent.  Like in the prior action, Plaintiffs allege that they were intimidated from running for office by private third parties who threatened to challenge their petitions in court.  (Doc. 1 at ¶¶ 41-42.)  However, as the Court has already found, such a threat cannot support Article III standing, as "[t]his threat . . . is 'conjectural or hypothetical,' not 'actual and imminent.'" *Constitution Party*, 712 F.Supp.2d at 396.  Plaintiffs will only face sanctions under the challenged statutes *if* they choose to run for office, and *if* their nomination papers are challenged by a private third-party, and *if* enough of their signatures are invalid as to disqualify them, and *if* the Plaintiffs commit fraud or act in bad faith, and *if* the state court decides to award sanctions.[6]  Such a hypothetical series of events premised upon multiple layers of "ifs" cannot serve as the foundation for an Article III controversy.

---

[6]    Plaintiffs note that in *Nominate Paper of Farnese*, 17 A.3d 357 (Pa. 2011), the Pennsylvania Supreme Court found that costs could be assessed whenever it would be "just" based on "the particular facts, the nature of the litigation ,and other considerations as may appear relevant." (Doc. 1 at ¶ 38) (quoting *Farness*, 17 A.3d at 370-72).  Nevertheless, Plaintiffs do not and cannot allege that Pennsylvania Courts assess costs in cases lacking fraud or bad faith.  In both of the cases cited by Plaintiffs, *Nader* and *Rogers,* the Commonwealth Court found that the candidates had acted inappropriately, thereby warranting the assessment of fees.  In Plaintiff Romanelli's case, the state court found that he has been "disingenuous[e]" with the court and had failed to follow the court's orders.  *Rogers*, 914 A.2d at 468-69.

Similarly, Plaintiffs' allegations that non-major party candidates have been assessed costs in the past does not state an injury-in-fact to the plaintiff candidates here who chose to withdraw their nomination papers or not run.  "[T]he Pennsylvania courts, in the two cases assessing sanctions against non-major party candidates, found the candidates had participated in fraud, bad faith, or similar inappropriate conduct prior to assessing costs." *Id.*  The Plaintiffs do not allege and the Court should not assume that Plaintiffs will commit fraud or bad faith in filing their nomination papers in the future.  As Plaintiffs proffer no allegations demonstrating injury-in-fact, but rather reiterate allegations already found by this Court to be insufficient to support standing, Plaintiffs lack standing to bring this action.

2.     Traceability

The Court has already held that Defendants do not "have the power to change the law. . . . The Executive Defendants simply administer the process created by statute." *Constitution Party*, 712 F.Supp.2d at 397.  "Plaintiffs have not alleged the defendants have the power to challenge a nomination paper and have not alleged sufficient facts to establish defendants have threatened, or could threaten, plaintiffs with an assessment of costs absent a challenge to a nomination paper. Only private individuals may challenge a non-major party candidate's nomination paper." *Id.* Neither the law nor Plaintiffs' allegations on this point have changed.  Thus, for the reasons already found by the Court, Plaintiffs' have failed to show that any injury can be traced to an action of the defendants.  *Id.*

3.     Redressability

The redressability prong of Article III standing "requires a showing that 'the injury will be redressed by a favorable decision.'" *Toll Bros., Inc. v. Township of Readington,* 555 F.3d 131, 142 (3d Cir. 2009) (quoting *Friends of the earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528

U.S. 167, 181 (2000)).  In the prior action, the Court found that no redressability existed because "[t]he court would have to assume a nomination paper would be challenged, the nomination paper would be held invalid, the challenger would seek costs, and the costs would be assessed." *Constitution Party*, 712 F.Supp.2d at 398.  As already discussed above, Plaintiffs in the instant action have failed to allege any new facts that would cure this fatal defect in their case.  By their own admission, none of the Plaintiffs currently have nomination papers pending.  It would thus be speculative to assume that any such nomination papers (and the hypothetical corresponding signatures) would be held invalid or that a court would impose costs.  Once again, Plaintiffs improperly seek what amounts to an advisory opinion from this Court on hypothetical facts.  *Id.* ("Courts are 'without power to give advisory opinions.'" (quoting *Rhone-Poulenc-Surfactants and Specialties, L.P. v. C.I.R.*, 249 F.3d 175, 182 (3d Cir. 2001)).

For these reasons, Plaintiff cannot establish any of the three prongs necessary to demonstrate Article III standing.  Therefore, the case should be dismissed for want of subject matter jurisdiction.

**B.**   **Plaintiffs Lack Standing To Seek Declaratory Relief.**

A plaintiff seeking a declaratory judgment "has Article III standing if 'there is substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Khodara Envtl., Inc.*, 376 F.3d 187, 193 (3d. Cir. 2004) (quoting *the St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000)).  As the Court has already found,

> Plaintiffs fail to establish the parties have adverse interests or a substantial controversy of sufficient immediacy and reality to warrant declaratory relief. Neither the judicial nor executive defendants can initiate a suit challenging a non-major party petition, see 25 Pa. Stat. Ann. § 2937, and neither can change the law. In addition, plaintiffs fail to establish a sufficient danger costs will be unconstitutionally assessed against a non-major party candidate.

9

*Constitution Party*, 712 F.Supp.2d at 398.  Plaintiffs do not proffer any new allegations that cure

this defect in their case.  None of the plaintiff candidates or political parties chose to run for

office this year and none have had their nomination papers challenged.  As such, and for the

reasons discussed above, Plaintiffs likewise fail to demonstrate Article III standing to request

declaratory relief.  Therefore, the case should be dismissed for want of subject matter

jurisdiction.

## C.     This Matter Is Not Ripe for Adjudication.

In its prior opinion, this Court found that the prior action was not ripe for review because

"[s]imply stated, there is no case here."  *Constitution Party*, 712 F.Supp.2d at 398.  The Court

found that Plaintiffs' request for injunctive relief was not ripe as there was no pending dispute,

no challenge to a nomination paper, and Plaintiffs had failed to establish that "a candidate who

acts in good faith will be assessed costs."  *Id.* at 398-99.  Nothing has changed in this regard.

Plaintiffs allege no pending dispute, no challenge to a nomination paper, and point to no

candidate who was assessed costs without a finding of bad faith or other inappropriate behavior.

Plaintiffs ask the Court, as they did in the earlier action, to imagine future horrors based upon

hypothetical facts.  For the reasons found by the Court before, this matter is not ripe for review

and should be dismissed.

Likewise, in its prior opinion, this Court found that Plaintiffs' request for declaratory

relief was not ripe because Plaintiffs failed to establish that "the plaintiff parties' future

candidates will be assessed costs, especially if the candidates act in good faith."  *Id.* at 399.

Additionally, the Court found that Plaintiffs had failed to establish a pending challenge to a

nomination paper or present controversy.  *Id.* at 400.  Again, nothing has changed in this regard.

The plaintiff candidates admit that they chose to voluntarily withdraw their nomination papers

out of an alleged fear of being challenged by third parties.  (Complaint at ¶ 41.)  As none of the

Plaintiffs have nomination petitions pending, no challenge to a petition is currently pending, and

therefore there exists no possibility of the imposition of costs by the Pennsylvania judiciary.[7]

Accordingly, this case is not ripe for review and the Complaint should be dismissed.

### D. The Judiciary's Possible Assessment Of Costs And Fees Against Minor Party Candidates Under Section 2937 (25 P.S. § 2937) Does Not Violate Their Rights to Equal Protection under the Fourteenth Amendment.

In *Rogers v. Corbett,* 468 F.3d 188 (3d Cir. 2006), the Third Circuit Court of Appeals

upheld Pennsylvania's system of requiring minor party candidates to obtain signatures on

nomination papers in order to have their names placed on the ballot.  It concluded that the two

percent signature requirement (*see* 25 P.S. §§ 2872.2 and 2911) "was justified by Pennsylvania's

interest in preventing ballot clutter and ensuring viable candidates."  *Rogers*, 468 F.3d at 197.

To the extent that Plaintiffs are challenging the different treatment accorded minor parties and

their candidates under the Election Code, their argument is foreclosed by the Court's decision in

*Rogers.*

With regard to Plaintiffs' argument that the mere possibility of assessment of costs and

fees by the judiciary if their nomination papers were successfully challenged pursuant to 25 P.S.

§ 2937 unequally burdens minor party candidates, this argument is also without foundation.

Plaintiffs' assertion that § 2937 treats minor party and political body canidates  differently from

major party candidates is simply incorrect.  Section 2937 provides that in cases where objections

to nomination papers are filed, the courts shall enter an "order as to the payment of the costs of

---

[7] More to the point, the Court cannot prevent non-parties from threatening Plaintiffs with opposition to their candidacy or force them to play nice.  The third party threats only succeeded because Plaintiffs were not confident enough that their nomination papers would survive close scrutiny.  Until Plaintiffs actually proceed with their nomination papers and are treated in an unconstitutional way, no ripe controversy exists.

the proceedings, including witness fees, as it shall deem just." 25 P.S. § 2937.  The

Pennsylvania Supreme Court has interpreted this provision as applying to both "nomination

petitions" (filed by major party candidates) and "nomination papers" (filed by minor party

candidates).  *In re Nader*, 588 Pa. 450, 905 A.2d 450 (2006).  A major party candidate must file

nomination petitions to be placed on the ballot.  If the candidate's nomination petitions are

successfully challenged, he can be subject to costs pursuant to Section 2937.  *See In re Lee*, 578

A.2d 1277, 1279 n.3 (Pa. 1990).  As § 2937 applies equally to both major party and minor

party/political body candidates alike, Plaintiffs equal protection claim (Count II) fails and should

be dismissed.[8]

> **E.      The Judiciary's Assessment Of Costs And Fees Against Minor Party
> Candidates Under Section 2937 (25 P.S. § 2937) Does Not Violate Their
> Rights Under The First And Fourteenth Amendments.**

The United States Supreme Court has held that "[a]lthough these rights of voters [the

right to vote and to political association] are fundamental, not all restrictions imposed by the

States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters'

rights to associate or to choose among candidates."  *Anderson v. Celebrezze*, 460 U.S. 780, 788

(1983).  Further, "as a practical matter, there must be a substantial regulation of elections if they

---

[8]      Further, under *Rogers*, the mere fact that major party candidates are not subject to the
same type of assessments does not constitute a violation of the minor parties' right to equal
protection.  Rather, the constitutionality of the challenged statutory provisions involves
balancing the state's interest against the burdens that are imposed on minor party candidates in
getting their names on the ballot.  *Rogers*, 468 F.3d at 193-94.  As discussed in greater detail in
the following subsection, the Commonwealth's substantial interest in ensuring that only those
candidates who have met the requirements establish by the Legislature have their names places
on the ballot, and the judiciary's substantial interest in being able to impose costs and fees on
parties that commit fraud, act in bad faith, or ignore court orders, outweigh any burden on minor
parties and their candidates.  Plaintiff can proffer no instance when a minor party candidate was
imposed fees without a showing of either bad faith or other impropriety.  Candidates do not have
an reasonable interest in being able to commit election fraud, act in bad faith, or ignore court
orders.

are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id.* (citation omitted). The Pennsylvania Supreme Court has already reviewed the challenged section of the Election Code and found that "the cost provision in Section 2937 does not impinge upon any constitutional rights in a way that would warrant constitutional scrutiny." *Nader*, 905 A.2d at 459. That decision and the Third Circuit decision in *Rogers v. Corbett* wisely found that the Commonwealth may impose reasonable requirements on individuals seeking to placement on the ballot. More to the point, the United States Constitution certainly does not guarantee a candidate the right to commit election fraud or prohibit a state court from imposing fees and costs on a party acting in bad faith.[9]

The imposition of costs is both fair and necessary for the smooth operation of elections. Any burden on minor parties and their candidates is minimal, and outweighed by the Commonwealth's substantial interest in ensuring that only those candidates who have met the requirements established by the Legislature have their names placed on the ballot. As the Supreme Court stated in *Burdick v. Takushi*, 504 U.S. 428, 440 n.10 (1992), "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable."

Without the cost assessment provisions contained in § 2937, there would be nothing to prevent the filing of frivolous, fraudulent, and/or patently deficient nomination papers by minor party candidates. While minor party candidates do have a constitutionally protected right to have

---

[9] Plaintiffs fail to proffer even a single example where a candidate was assessed costs under § 2937 without a corresponding finding of either bad faith or refusal to comply with the court orders. But even if the Commonwealth were to enact a statute that forced candidates who lose a challenge to pay the reasonable costs and fees of the challenger (akin to the English Rule), such a rule would not offend the United States Constitution. Rather, it would merely encourage candidates to ensure that their nomination papers were in proper order before submission and discourage a flippant attitude towards the high honor of running for office.

their names placed on the ballot, other candidates and the voters at large have a similar right to make sure that the election laws are complied with. Section 2937 is fair to both minor party candidates and those who challenge their nomination papers. It gives the courts the authority to award costs to those who successfully challenge the filing of nomination papers as well as costs to the candidate if the challenge is unsuccessful.

The authority granted to Pennsylvania's courts under Section 2937 is similar to powers that both federal and state courts already possess. Rule 11 provides for the imposition of sanctions in federal court, including attorney's fees, for making claims or arguments that are frivolous or lack any reasonable evidentiary support. Fed. R. Civ. P. No. 11. The Pennsylvania Rules of Civil Procedure have a similar provision. *See* Pa. R. Civ. P. No. 1023.1. Moreover, the courts have an inherent authority under our constitutional system to control proceedings before them as necessary for the efficient operation of the judiciary, outweighing any minimal chilling effect on the First Amendment rights of minor party candidates. In *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), the United States Supreme Court stated that a court may – even absent any statutory authority – "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45-46 (quoting *Alyeska v. Pipeline Sercice Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975)). *See also Gillette Foods Inc. v. Bayernwald-Fruchteverwertung*, 977 F.2d 809, 813 (3d Cir. 1992).

There is no question that minor party candidates seeking to be placed on the ballot are engaged in protected activity under the First Amendment. Moreover, there is a general right to access the courts and petition the government which gives First Amendment protection to all citizens. *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997). Accordingly, if the plaintiffs' position were correct, the ability of the courts to impose sanctions in all cases would

be undermined and rendered impotent since they might create a "chilling" effect for others who seek to enforce their rights before the courts. However, the courts' power to impose sanctions has been upheld even where it has been claimed that the plaintiff's constitutional rights have been violated. *See Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988) (upholding sanctions of attorneys fees under Rule 11 in *Bivens* action as not "violat[ing] public policy concerns by chilling attorney incentives to file civil rights cases" where complaint was legally frivolous). There is simply no reason why courts should be foreclosed from imposing sanctions or costs in election cases while they are permitted to do so in all other types of cases.

Plaintiffs point to two cases in which attorney fees have been awarded pursuant to Section 2937 to show the chilling effect posed to minor party candidates. *See Nader* and *Rogers*. However, in *Nader*, the imposition of costs was based on the factual determination that the campaign's signature gathering "involved fraud and deception of massive proportions."[10] *Nader*, 588 Pa. at 466, 905 A.2d at 460. Similarly, in *Rogers*, the Commonwealth Court found that candidate Romanelli, through his attorneys, was disingenuous and failed to act in good faith to comply with the court's prior orders regarding certification of signatures. *Rogers*, 914 A.2d at 469 ("Candidate's cumulative disingenuousness in these proceedings has crossed the line into bad faith on the part of Candidate and his counsel.").

In both of these cases, attorney's fees were imposed, but only after Commonwealth Court determined that the conduct of the minor party candidates was egregious and that they had not acted in good faith. If a candidate is reckless in filing facially deficient nomination papers or

---

[10]   The Commonwealth Court found that in addition to the nomination papers containing many obviously fictitious names such as "Mickey Mouse" and "Fred Flintstone", thousands of other names were "created at random and then randomly assigned either existent or non-existent addresses by the circulators." *Nader*, 588 Pa. at 458, 905 A.2d at 455.

repeatedly fails to comply with court orders, he cannot use the First Amendment as a shield from sanctions imposed pursuant to Section 2937, the court's general powers created by the Legislature, or its inherent powers to control judicial proceedings.[11]   There is nothing suggesting that candidates who use due diligence in collecting signatures and file nomination papers that in objective good faith comply with the requirements of the Election Code will fall victim to sanctions under Section 2937.  Furthermore, as demonstrated by both the *Nader* and *Rogers* cases, candidates are given a full hearing and the right to appeal to the Pennsylvania Supreme Court before attorney fees or other costs are imposed pursuant to Section 2937.  Even if the minor party candidates believe that these cases were wrongly decided, the procedures provided by the Pennsylvania Election Code are more than sufficient to protect their First and Fourteenth Amendment rights.

Plaintiffs allege that Section 2937 "chills" candidates from filing nomination papers because of the possibility that they will be subjected to sanctions.  Yet, the only two cited examples of costs and fees being assessed by the courts are in cases where the candidates were found to have engaged in egregious conduct.  The First Amendment does not entitle minor party candidates to a declaratory judgment which allows them to file nomination papers in bad faith and prohibits the judiciary from imposing sanctions for such conduct.  Section 2937 permits judges to consider such things as the good faith basis of filing the nomination papers, as well as

---

[11]   The Supreme Court's balancing of the First Amendment in the context of defamation demonstrates that there are legitimate limitations on an individual's constitutional rights. Accordingly, some statements are protected as free speech under the First Amendment while others which are made recklessly are not. *See, e.g.*, *New York Times v. Sullivan*, 376 U.S. 254 (1964) (protecting negligently false statements to avoid a chilling effect on constitutionally valuable speech); *Marcone v. Penthouse International Magazine for Men,* 754 F.2d 1072 (3d Cir. 1985) (same).  Similarly, while minor party candidates have a definite right to run for public office, they do not have a right to file documents (required in order to be placed on the ballot) that on their face are obviously deficient.

the candidate's financial ability to pay any sanctions imposed.  As in all instances where judges impose sanctions, established principles of due process were observed.  Plaintiffs cannot demonstrate through their allegations that Section 2937 is unconstitutional as applied to them or that the procedural safeguards under Pennsylvania's Election Code are not sufficient to protect their rights.  *See Aiello v. City of Wilmington*, 623 F.2d 845 (3d Cir. 1980) ("If [the frequency of impermissible applications] is relatively low, it may be more appropriate to guard against the statute's conceivably impermissible applications through case-by-case adjudication rather than through facial invalidation.").  This Court should not declare Section 2937 invalid based on the presumption that Pennsylvania's courts will not interpret it in accordance with the Fourteenth Amendment.[12]

For the above reasons, sections 2911(b) and 2937 do not violate the First or Fourteeenth Amendments, and Counts I and III of the Complaint should be dismissed.

---

[12]    Comity also requires that it accept the factual determinations made by the Commonwealth Court in *Nader* and *Romanelli* unless vacated by the Pennsylvania Supreme Court or the United States Supreme Court.  To the extent that Plaintiffs are attempting to use this case to collaterally attack those decisions, this Court should abstain from involving itself in those cases.  *See Guarino v. Larsen*, 11 F.3d 1151, 1156-57 (3d Cir. 1993) ("Just as federal courts should presume that pending state court proceedings can correctly resolve federal questions, they should also presume that completed state court proceedings have correctly resolved these questions").  In particular, it is unclear why the criminal charges brought by the Office of Attorney General regarding the misappropriation of funds in connection with the filing of objections to the nomination papers in the *Nader* and *Romanelli* cases would negate the decisions reached by the Commonwealth Court.  In any case, the resolution of that issue is best left to the state courts.  *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  More importantly, it is difficult to see any relevance that the allegations regarding criminal activity surrounding the 2004 and 2006 elections have to the filing of nomination papers for future elections and whether the possible imposition of costs and fees by the judiciary would constitute a violation of the plaintiffs' constitutional rights.

**F.     Plaintiffs cannot state a claim against the Defendants since they are not personally involved in the challenging process.**

The Plaintiffs allege that their rights under the First and Fourteenth Amendments are being violated by the application of § 2937 to them.  Assuming *arguendo* that this is true, Defendants have no involvement in the matters complained of.  Objections to nomination papers are filed with the Commonwealth Court by third parties.  Defendants do not initiate a hearing on objections and do not participate as a party in those matters.

In order to bring a claim pursuant to § 1983, the official sued must have some type of personal involvement in the matters complained of.  *See Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999); *Rizzo v. Goode*, 423 U.S. 362 (1976).  Although Defendants Aichele and Marks are the Commonwealth officials with primary responsibility over the administration of the Election Code, determinations regarding objections to nomination papers, and the granting of costs pursuant to § 2937 are matters delegated by statute exclusively to the judiciary.  The principles governing the separation of powers, the independence of the judiciary, and due process would surely be violated if Defendants could simply ignore or override the Pennsylvania Supreme Court's interpretation of the meaning of § 2937 or the factual determinations made by the Commonwealth Court.

Similarly, the only allegations specifically directed at Attorney General Kelly are that, beginning under her predecessor, the Attorney General's office criminally charged certain third-parties with misusing taxpayer funds for private political purposes, "including the illegal preparation of the challenges to the Nader-Camejo 2004 and GPPA 2006 nomination petitions." (Complaint at ¶ 28.)  Plaintiffs do not state how Attorney General Kelly's actions violate their rights or how an injunction against her would provide Plaintiffs with the relief they seek.  Accordingly, all claims that the Defendants have violated the constitutional rights of the

Plaintiffs by the possibility of the judiciary's imposition of costs and fees against them pursuant to § 2937 should be dismissed.

### G.    The Complaint Was Improperly Served.

None of the defendants have been properly served in this case.  Federal Rule of Civil Procedure 12(b)(5) permits a party to challenge the sufficiency of service of process when the plaintiff has failed to effect service of process in a fashion compliant with Rule 4. [13]   Under Rule 4, a plaintiff must arrange for personal service of a summons and complaint upon each defendant unless the defendant waives service.  *See* Fed.R.Civ.P. 4(c)(1), (2); 4(d); 4(e).

In *Nanyonga v. Immigration and Naturalization Service*, the plaintiff served individual defendants with the complaint by certified mail.  200 F.R.D. 503, 505 (M.D. Pa. 2001).  The mailing did not contain a request that the defendants waive service under Federal Rule of Civil Procedure 4(d)(2).  *Id.*  Therefore, the Court held that the plaintiff had not made proper service upon the defendants.  *Id.*  "Unless an individual defendant waives service under Rule 4(d)(2), service cannot be by mail.  *See* Rule 4(e).  Additionally, while Rule 4(e)(1) allows service under the rules of the state where the district court is located, Pennsylvania does not allow service by mail upon individuals either."  *Id.*

The present case is similar to *Nanyonga*.  Like the plaintiff in *Nanyonga*, the plaintiff in this matter attempted service via certified mail without a request for waiver.  As in *Nanyonga*, service in this case is improper.  Accordingly, in the event the Court does not dismiss the

---

[13]    Rule 4(e) requires a plaintiff to serve the complaint in a manner authorized by the "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).  In Pennsylvania, Rules 400-430 of the Pennsylvania Rules of Civil Procedure govern service of process.

Complaint based upon the many reasons above, Defendants were nevertheless improperly served and the service of process should be quashed.

**V.     CONCLUSION**

For the foregoing reasons, Plaintiffs lack standing, the case is not ripe for review, Plaintiffs fail to state a viable cause of action, Plaintiffs fail to allege personal involvement, and Plaintiffs failed to properly serve the Complaint.  For any of these reasons, the Complaint should be dismissed and the case closed.

**Respectfully submitted,**

**LINDA L. KELLY**
**Attorney General**

By:     *s/ Sean A. Kirkpatrick*
      **SEAN A. KIRKPATRICK**
      **Deputy Attorney General**
      **Attorney ID 92960**

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 783-1471**
**Fax:    (717) 772-4526**
**skirkpatrick@attorneygeneral.gov**

      **GREGORY R. NEUHAUSER**
      **Chief Deputy Attorney General**
      **Chief, Civil Litigation Section**

**Date:  July 25, 2012**

      **Counsel for Defendants**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE CONSTITUTION PARTY** | : | |
| **OF PENNSYLVANIA, ET AL.** | : | |
| **PLAINTIFFS** | : | **Case No. 1:12-CV-02726** |
| | : | |
| **v.** | : | **(Judge Stengel)** |
| | : | |
| | : | |
| **CAROL AICHELE, ET AL.** | : | |
| **DEFENDANTS** | : | |
| | : | **ELECTRONICALLY FILED** |

---

**CERTIFICATE OF SERVICE**

I, Sean Kirkpatrick, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on July 25, 2012, I caused to be served a true and correct copy of the foregoing document via the Electronic Filing System to the following individual:

Oliver B. Hall
Center for Competitive Democracy
1835 16th Street N.W.
Washington, DC 20009
*(Counsel for Plaintiffs)*

*s/ Sean A. Kirkpatrick*
**Sean A. Kirkpatrick**
Deputy Attorney General

21