UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CONSTITUTION PARTY OF PENNSYLVANIA, THE GREEN PARTY OF PENNSYLVANIA, THE LIBERTARIAN PARTY OF PENNSYLVANIA, JOE MURPHY, JAMES N. CLYMER, CARL J. ROMANELLI, THOMAS ROBERT STEVENS and KEN KRAWCHUK, | |
| *Plaintiffs*, | Case No. 1:12-CV-02726 |
| v. | |
| CAROL AICHELE, JONATHAN M. MARKS and LINDA L. KELLY, | |
| *Defendants*. | |

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

Pursuant to Fed. R. Civ. P. 65(a) and (b), Plaintiffs Constitution Party of Pennsylvania, Green Party of Pennsylvania, Libertarian Party of Pennsylvania, Joe Murphy, James N. Clymer, Carl J. Romanelli, Thomas Robert Stevens and Ken Krawchuk hereby move the Court for a temporary restraining order, or in the alternative, for a preliminary injunction, enjoining Defendants Carol Aichele and Jonathan M. Marks from enforcing the signature requirement imposed by 25 P.S. § 2911(b) ("Section 2911(b)").

In support of this motion, Plaintiffs submit the attached Memorandum of Law, and state that all relevant factors weigh in favor of granting the relief requested. Plaintiffs also submit the Second Declaration of James N. Clymer, the Second Declaration of Carl J. Romanelli and the Second Declaration of Thomas Robert Stevens, which affirm that Plaintiffs complied with Section 2911(b) by timely submitting nomination petitions with more than 20,601 signatures. The period for private parties to challenge the nomination petitions is now underway, however,

and Plaintiffs may be required to pay the costs of any such challenge. 25 P.S. § 2937 ("Section 2937"). Absent the preliminary relief requested herein, therefore, the filing of a challenge will cause Plaintiffs immediate and irreparable injury, because they are unable to assume the risk of incurring such costs, and they will be forced to withdraw their nomination petitions and forego participation in Pennsylvania's 2012 general election.

Accordingly, Plaintiffs seek preliminary relief as necessary to protect their interests in the event a challenge is filed on or before the August 8, 2012 deadline. Specifically, Plaintiffs request an order enjoining Secretary Aichele and Commissioner Marks from enforcing the Section 2911(b) signature requirement, so that Plaintiffs need not assume the risk of incurring costs under Section 2937.

Dated: August 7, 2012	Respectfully submitted,

/s/Oliver B. Hall
Oliver B. Hall
(Motion for Admission Pro Hac Vice Pending)
Center for Competitive Democracy
P.O. Box 21090
Washington, D.C. 20009
(202) 248-9294 (ph)
(202) 248-9345 (fx)
oliverhall@competitivedemocracy.org

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CONSTITUTION PARTY OF PENNSYLVANIA, THE GREEN PARTY OF PENNSYLVANIA, THE LIBERTARIAN PARTY OF PENNSYLVANIA, JOE MURPHY, JAMES N. CLYMER, CARL J. ROMANELLI, THOMAS ROBERT STEVENS and KEN KRAWCHUK,<br><br>   *Plaintiffs*,<br><br>      v.<br><br>CAROL AICHELE, JONATHAN M. MARKS and LINDA L. KELLY,<br><br>   *Defendants*. | Case No. 1:12-CV-02726 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

Plaintiffs Constitution Party of Pennsylvania, Green Party of Pennsylvania, Libertarian Party of Pennsylvania, Joe Murphy, James N. Clymer, Carl J. Romanelli, Thomas Robert Stevens and Ken Krawchuk (the "Minor Parties") respectfully request that the Court enter a temporary restraining order, or in the alternative, a preliminary injunction, enjoining Defendants Carol Aichele and Jonathan M. Marks from enforcing the signature requirement imposed by 25 P.S. § 2911(b) ("Section 2911(b)"). Such relief is needed because each of the Minor Parties timely submitted nomination petitions to place their candidates on Pennsylvania's November 6, 2012 general election ballot, and Secretary Aichele certified that each party submitted more than the 20,601 signatures required by Section 2911(b). *See* Second Declaration of James N. Clymer ("Second Clymer Dec.") ¶ 4; Second Declaration of Carl Romanelli ("Second Romanelli Dec.") ¶ 4; Second Declaration of Thomas Robert Stevens ("Second Stevens Dec.") ¶ 4. The period for private parties to challenge the nomination petitions is now underway, however, and the Minor

1

Parties may be required to pay the costs of any such challenge. 25 P.S. § 2937 ("Section 2937"). Absent the preliminary relief requested herein, therefore, the filing of a challenge will cause the Minor Parties immediate and irreparable injury: they will be forced to withdraw their nomination petitions, and to forego participation in Pennsylvania's 2012 general election, because they cannot afford to assume the risk of incurring costs under Section 2937. *See* First Declaration of James N. Clymer ("First Clymer Dec.") ¶ 8; First Declaration of Carl Romanelli ("First Romanelli Dec.") ¶ 10; First Declaration of Michael Robertson ("First Robertson Dec.") ¶ 10.

The Minor Parties thus seek injunctive relief as necessary to ensure their candidates may run for public office in Pennsylvania without assuming the risk of incurring substantial costs due to their good faith effort to comply with Section 2911(b). Such relief is particularly warranted because, although Secretary Aichele certified each of the Minor Parties' nomination petitions, she did so only after invalidating a substantial but unknown number of signatures based on minor technical defects (such as a missing "2012" in the date field, even though the petitions were unavailable prior to 2012). *See* Second Stevens Dec. ¶¶ 6-7; Second Clymer Dec. ¶ 6; Second Romanelli Dec. ¶ 6. As a result, the extra signatures the Minor Parties submitted in anticipation of a challenge were substantially reduced, making it more likely they will incur costs in the event of a challenge.

**ARGUMENT**

To gain access to Pennsylvania's general election ballot, the Minor Parties have no alternative but to submit nomination petitions as required by Section 2911(b), thereby assuming the risk of incurring costs if they are challenged pursuant to Section 2937. Complaint ("Comp.") ¶¶ 18, 21-22. This statutory scheme is unconstitutional on its face. No other state requires that candidates pay the costs of validating their own nomination petitions, and without exception,

2

federal courts have struck down such requirements on the ground that states may not condition participation in elections upon an ability to pay. Pennsylvania's statutory scheme is also unconstitutional as applied, because it chills and severely burdens the Minor Parties' First and Fourteenth Amendment rights, and is not narrowly tailored to serve a compelling state interest.

To obtain preliminary injunctive relief from Pennsylvania's statutory scheme, the Minor Parties must demonstrate that: 1) they have a likelihood of success on the merits; 2) they will suffer irreparable harm if the injunction is denied; 3) granting the injunction will not result in even greater harm to the nonmoving defendants; and 4) the public interest favors such relief. *See NAACP of Pennsylvania v. Cortes*, 591 F. Supp. 2d 757, 763 (E.D. Pa. 2008) (citing *Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Township Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004)). Each of these factors weighs in favor of granting the Minor Parties a preliminary injunction enjoining enforcement of the Section 2911(b) signature requirement.[1]

### I. Plaintiffs Have a Strong Likelihood of Success on the Merits, Because Pennsylvania's Statutory Scheme Is Unconstitutional on Its Face and as Applied.

#### A. The Imposition of Costs Against Candidates Who Submit Nomination Petitions as Required By Section 2911(b) Is Unconstitutional on Its Face.

The Supreme Court has long recognized that states "may not impose a penalty upon those who exercise a right guaranteed by the Constitution." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (striking down Virginia law requiring voters either to pay a poll tax or file a certificate of residence). The Court has thus held that states may not condition participation in elections upon an ability to pay fees or taxes. *See Bullock v. Carter*, 405 U.S. 134 (1972) (holding non-trivial filing fees for candidates unconstitutional); *Lubin v. Panish*, 415 U.S. 709 (1974) (holding filing

---

[1] Prior to the 2006 General Election, several candidates sought but were denied preliminary injunctive relief declaring Section 2911(b) unconstitutional as applied to them. *See Rogers v. Cortes*, 426 F. Supp. 2d 232 (M.D. Pa. 2006), *aff'd*, 468 F.3d 188 (3rd Cir. 2006). Section 2937 was not at issue in *Rogers*, however, and consequently neither the District Court nor the Court of Appeals considered the severe burden that Section 2911(b) imposes in conjunction with Section 2937. The issue raised in this case – whether Pennsylvania may require that the Minor Parties pay the costs of validating nomination petitions they are required by law to submit – has never been decided.

3

fees for candidates unconstitutional in the absence of non-monetary alternatives); *Harper v. Virginia Bd. of Elections*, 383 U.S. 663 (1966) (holding poll tax unconstitutional). Under this line of cases, Pennsylvania's statutory scheme is unconstitutional on its face, because it penalizes citizens who exercise their First Amendment rights, and conditions participation in elections on an ability to pay. *See id.*

The Pennsylvania Supreme Court recently clarified the standard under which costs may be assessed against candidates who submit nomination petitions pursuant to Section 2911(b). *See In Re Farnese*, 17 A.3d 357 (Pa. 2011). Expressly rejecting the "heightened rule" that such costs may be assessed only where a party is found to have engaged in "fraud, bad faith, intention, or gross misconduct," the Court clarified instead that costs may be assessed whenever it is deemed "just," based on "the particular facts, the nature of the litigation, and other considerations as may appear relevant." *Id.* at 370-72. Thus, candidates who defend their nomination petitions when challenged pursuant to Section 2937 may be required to pay costs even if they are not found to have engaged in any wrongdoing.

Pennsylvania is the only state in the nation that requires candidates to pay the costs of validating their nomination petitions. That is because, following *Bullock* and *Lubin*, federal courts have, without exception, struck down statutory schemes that impose financial burdens on candidates and political parties without providing them with a non-monetary alternative. *See, e.g., Belitskus v. Pizzingrilli*, 343 F.3d 632 (3rd Cir. 2003) (enjoining enforcement of Pennsylvania's mandatory filing fees); *Republican Party of Arkansas v. Faulkner County*, 49 F.3d 1289 (8th Cir. 1995) (holding that Arkansas cannot require political parties to hold and pay for primary elections); *Fulani v. Krivanek*, 973 F.2d 1539 (11th Cir. 1992) (declaring nomination petition signature verification fees unconstitutional); *Dixon v. Maryland State Bd. of Elections*,

4

878 F.2d 776 (4th Cir. 1989) (declaring mandatory filing fee of $150 for non-indigent write-in candidates unconstitutional); *McLaughlin v. North Carolina Board of Elections*, 850 F. Supp. 373 (M.D. N.C. 1994) (declaring five-cent per signature verification fee unconstitutional); *Clean-Up '84 v. Heinrich*, 590 F. Supp. 928 (M.D. Fl. 1984) (declaring ten-cent per signature verification fee unconstitutional). By contrast with this great weight of authority, the Minor Parties are unaware of a single case upholding a statutory scheme such as Pennsylvania's, which authorizes the imposition of costs against candidates who submit nomination petitions in a good faith effort to appear on the general election ballot.

Compared with the foregoing cases, the constitutional infirmity of Pennsylvania's statutory scheme is even more clear, due to the sheer size of the financial burdens it imposes on First Amendment protected conduct. Twice in recent election cycles, candidates have been ordered to pay more than $80,000 in costs after defending nomination petitions they were required to submit under Section 2911(b). *See In Re Nader*, 905 A.2d 450 (Pa. 2006); *In Re Rogers*, 942 A.2d 915 (Pa. Commw. 2008). In *Belitskus*, by contrast, the Third Circuit found that Pennsylvania's mandatory filing fees, which ranged from only $5 to $200, nonetheless placed the Commonwealth "among the few states that have failed to come into compliance with applicable Supreme Court precedent." *See Belitskus*, 343 F.3d at 651 (citing *Bullock* and *Lubin*). Although *Belitskus* involved an "as applied" challenge, the Court rejected the need for ongoing "case-by-case litigation," and concluded that Pennsylvania's mandatory filing fees "inevitably" would be unconstitutional as applied to a certain percentage of candidates. *Id.* at 650-51. Unlike filing fees, however, which may be permissible if a non-monetary alternative is available, *see id.* at 648 n.10, the imposition of costs against candidates who in good faith submit nomination

5

petitions pursuant to Section 2911(b) is unconstitutional on its face, because it penalizes citizens for engaging in First Amendment protected conduct. *See Harman*, 380 U.S. at 540.

It makes no difference that candidates might not incur costs if they defend nomination petitions submitted pursuant to Section 2911(b). Every candidate who submits nomination petitions nevertheless faces the threat of incurring costs, as a condition of participating in Pennsylvania's general election. *See In Re Farnese*, 17 A.3d at 370-72. This threat is constitutionally impermissible. As the Third Circuit has recognized, "unconstitutional statutes or ordinances tend to chill protected expression among those who forbear speaking because of the law's very existence." *Peachlum v. City of York*, 333 F.3d 429, 434 (3rd Cir. 2003) (citation omitted); *see also N.A.A.C.P. v. Button*, 371 U.S. 415, 433 (1963) ("the threat of sanctions may deter the[] exercise [of First Amendment rights] almost as potently as the actual application of sanctions"). That is the case here. The Minor Parties have already been compelled to withdraw nomination petitions in previous elections, due to the threat that they would incur costs under Section 2937. *See* First Declaration of James N. Clymer ¶ 6; First Declaration of Hillary Kane ¶ 8; First Declaration of Melvin J. Packer ¶ 6; First Declaration of Christina Valente ¶ 5; First Declaration of Michael Robertson ¶ 5; First Declaration of Ken Krawchuk ¶¶ 5-6; First Declaration of Douglas Jamison ¶ 6; First Declaration of Marakay Rogers ¶ 6; First Declaration of Kat Valleley ¶ 5. The Minor Parties now face the same threat if they defend their 2012 nomination petitions. Pennsylvania's statutory scheme is therefore unconstitutional on its face, because it threatens to penalize the Minor Parties for engaging in First Amendment protected conduct.

   **B. The Imposition of Costs Against Candidates Who Submit Nomination Petitions as Required by Section 2911(b) Is Unconstitutional as Applied.**

The Minor Parties challenge Pennsylvania's statutory scheme, as applied, on two distinct but related grounds. First, the Minor Parties allege that Pennsylvania burdens their rights of speech, petition and political association, and their right to due process of law, by threatening to impose substantial costs upon them if they defend nomination petitions they are required to submit under Section 2911(b). Comp. ¶¶ 48-56. Second, the Minor Parties allege that Pennsylvania denies them equal protection of the law, because only minor party and independent candidates must assume the risk of incurring such costs in order to appear on the general election ballot. Comp. ¶¶ 57-65.

To determine the proper standard of review of ballot access laws, the Supreme Court has established a balancing test, according to which a reviewing court:

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). The purpose of this test is to render "the severity of the access law directly proportional to the degree of scrutiny it will receive by a court." *Patriot Party of Pennsylvania v. Mitchell*, 826 F.Supp. 926, 934 (E.D. Pa. 1993). Thus, where a statute imposes substantial restrictions on political parties' constitutional rights, the proper level of review is "comparable to the strict scrutiny standard." *Consumer Party v. Davis*, 633 F. Supp. 877, 890 n.17 (E.D. Pa. 1986). A "heightened standard" of review also applies where a ballot access statute "affect[s] people's right to vote." *See Patriot Party of Pennsylvania*, 826 F.Supp. 934 n.7. Finally, statutes that "arbitrarily discriminate against minor political

7

parties" are also subject to a heightened standard of review, and can withstand an equal protection challenge only if necessary to serve a compelling state interest. *See id.* at 941.

Accordingly, under *Anderson*, Pennsylvania's statutory scheme is also unconstitutional as applied, because it imposes severe and unequal burdens on the Minor Parties' First and Fourteenth Amendment rights, and it is not necessary to achieve a compelling state interest.

### 1. The Burdens Imposed on the Minor Parties' Rights Are Severe.

The Supreme Court has never had occasion to address the particular burdens imposed by Pennsylvania's unique statutory scheme, but the Court's rationale for striking down mandatory filing fees is equally applicable here. In *Bullock*, for instance, the Court held Texas' primary election filing fee system unconstitutional on equal protection grounds, because it required candidates to pay filing fees as high as $9,800, but provided no non-monetary alternative. *See Bullock*, 405 U.S. at 134, 149. The Court found that "the very size of the fees imposed" gave the Texas system "a patently exclusionary character," *id.* at 143, and thus rejected the state's assertion that candidates should "pay that share of the cost that they have occasioned" by availing themselves of the primary election machinery. *Id.* at 147-48. Texas had made the "legislative choice" of directing political parties to hold primaries elections, the Court reasoned, and therefore concluded that Texas could not require candidates "to shoulder the costs of holding [such] elections." *Id.* at 147-49.

Two years after *Bullock*, the Court struck down California's primary election filing fee system, which imposed lower filing fees (ranging as high as $982), but still provided no non-monetary alternative. *See Lubin*, 415 U.S. 709. The Court did not specifically rely on equal protection grounds, but concluded that a state may not, "consistent with constitutional standards," require as a condition of ballot access the payment of filing fees that candidates

8

cannot afford. *See id.* at 718. Crucial to this holding was the Court's finding that California's filing fees were substantial enough to exclude "impecunious but serious" candidates. *See id.* at 717.

The state of Pennsylvania, like the state of Texas in *Bullock* and the state of California in *Lubin*, made a legislative choice to require that the Minor Parties submit nomination petitions to access the general election ballot. 25 P.S. § 2911(b). The state of Pennsylvania also made a legislative choice to allow private parties to challenge such petitions, rather than requiring the Secretary of the Commonwealth to make a definitive determination as to their validity. *See* 25 P.S. §§ 2936, 2937. Under *Bullock* and *Lubin*, therefore, Pennsylvania may not require that candidates shoulder the burden of those legislative choices, by requiring candidates to pay their challengers' costs. *See Bullock*, 405 U.S. at 149; *Lubin*, 415 U.S. at 717; *see also Belitskus*, 343 F.3d 632; *Republican Party of Arkansas*, 49 F.3d 1289; *Fulani*, 973 F.2d 1539; *Dixon*, 878 F.2d 776; *McLaughlin*, 850 F. Supp. 373; *Clean-Up '84*, 590 F. Supp. 928.

Pennsylvania's statutory scheme also severely burdens the Minor Parties by denying them equal protection, because it discriminates against "small political parties and their members and candidates." *Consumer Party*, 633 F. Supp. at 889; *see Anderson*, 468 F.3d at 793. Only minor party and independent candidates must submit nomination petitions to qualify for listing on Pennsylvania's general election ballot. 25 P.S. § 2911(b). Major party candidates, by contrast, access the general election ballot by means of publicly funded primary elections. 25 P.S. § 2862. Therefore, only minor party and independent candidates must assume the risk of incurring costs as a condition of their participation in Pennsylvania's general election. 25 P.S. §§ 2911(b), 2937. More to the point, while major parties and their supporters can (and do) challenge the Minor Parties pursuant to Section 2937, the Minor Parties cannot similarly challenge major party

9

candidates. Such a unilateral system thus imposes an unequal burden on the Minor Parties. *See Bullock*, 405 U.S. at 144 ("we would ignore reality were we not to recognize that this system falls with unequal weight on voters, as well as candidates, according to their economic status"); *Lubin*, 415 U.S. at 719 ("ballot access must be genuinely open to all, subject to reasonable requirements") (citation omitted).

### 2. Requiring the Minor Parties to Pay Costs to Private Parties Who Challenge Their Nomination Petitions Is Not Narrowly Tailored to Serve a Compelling State Interest.

Due to the severe and unequal burdens that Pennsylvania's statutory scheme imposes, the appropriate standard of review under *Anderson* is "comparable to strict scrutiny." *Consumer Party*, 633 F. Supp. at 890 n.17 (citation omitted); *see Patriot Party of Pennsylvania*, 826 F. Supp. at 934 (citation omitted). To withstand such scrutiny, the imposition of costs against candidates who submit nomination petitions under Section 2911(b) must serve "a compelling interest," *Lubin*, 415 U.S. at 722, and Pennsylvania must make "a showing of necessity" for imposing such costs. *Bullock*, 405 U.S. at 147. Pennsylvania's statutory scheme fails on both counts.

Ordering candidates to pay costs to private parties who challenge their nomination petitions does not serve any compelling state interest. It does not even serve the legitimate state interest of "reliev[ing] the State treasury of the cost of conducting…elections," which the Supreme Court found insufficient to justify the filing fees in *Bullock*. *Id*. On the contrary, as the Supreme Court of Pennsylvania has observed, the adjudication of nomination petition challenges can require the courts to expend "monumental effort and resources." *In Re Nader*, 905 A.2d at 454. Thus, Pennsylvania's statutory scheme does not relieve the state of the cost of holding elections, but merely provides an added financial incentive for private parties to challenge their

political competitors. Moreover, even if the challenge process did alleviate the state's costs, it is the "creature of state legislative choice," and Pennsylvania cannot require candidates to "shoulder the costs" of that choice. *Bullock*, 405 U.S. at 140, 149.

Further, while the imposition of costs against candidates who submit nomination petitions pursuant to Section 2911(b) might serve Pennsylvania's interest in excluding non-serious candidates from the ballot, it does so only by requiring that all minor party and independent candidates assume the risk of incurring a substantial financial burden as a prerequisite to participating in the general election. Assumption of this risk is "an absolute, not an alternative, condition" for such candidates to gain ballot access. *Lubin*, 415 U.S. at 718. Pennsylvania's statutory scheme thus deters all minor party and independent candidates from seeking ballot access, regardless of how "serious" they are, *Bullock*, 405 U.S. at 145-46, or how much voter support they enjoy. *See Lubin*, 415 U.S. at 716-18. It therefore fails to regulate with the requisite "narrow specificity." *Button*, 371 U.S. at 433.

Finally, the Third Circuit recently concluded that the signature requirement mandated by Section 2911(b), by itself, is more than sufficient to serve Pennsylvania's regulatory interests. *See Rogers*, 468 F.3d at 194, 198. Section 2937 was not at issue in *Rogers*, but if Section 2911(b) is independently sufficient to serve Pennsylvania's regulatory interests, then the imposition of costs against candidates who seek to comply with Section 2911(b) cannot also be necessary. *See id.* Therefore, the imposition of such costs is not necessary to achieve any legitimate state interest.

In sum, Pennsylvania's statutory scheme imposes severe and unequal burdens on the Minor Parties, and the means chosen are not necessary to achieve a compelling state interest.

Therefore, there is a strong likelihood the Minor Parties will prevail on the merits of their challenge to Pennsylvania's statutory scheme.

**II.     The Minor Parties Will Suffer Irreparable Injury in the Absence of Preliminary Relief.**

The Minor Parties will suffer irreparable injury in the absence of preliminary relief, because they are unable to assume the risk of incurring the costs of defending their nomination petitions. *See* First Clymer Dec. ¶ 8; First Romanelli Dec. ¶ 10; First Robertson Dec. ¶ 10. The filing of a challenge pursuant to Section 2937 will therefore force them to withdraw their nomination petitions, and to forego participation in the 2012 general election. *See id.* This injury is irreparable, because it is "of a peculiar nature, so that compensation in money cannot atone for it." *Berks County*, 250 F. Supp. 2d at 540 (quoting *A.O. Smith Corp. v. Federal Trade Comm'n*, 530 F.2d 515, 525 (3d Cir. 1976)). In other words, if the Minor Parties are excluded from the 2012 general election ballot, their injury "cannot be repaired, retrieved, put down again [or] atoned for" after the fact. *Id.* Preliminary relief is therefore warranted to prevent such injury.

**III.    Defendants Will Not Suffer Any Harm If the Court Grants the Minor Parties Preliminary Relief.**

Each of the Minor Parties has substantially complied with Section 2911(b) by submitting more than 20,601 signatures, as certified by Secretary Aichele. *See* Second Clymer Dec. ¶ 4; Second Romanelli Dec. ¶ 4; Second Stevens Dec. ¶ 4. Therefore, granting the preliminary relief requested herein will not cause Defendants any harm, because it will merely permit the Minor Parties to remain on the 2012 general election ballot without assuming the risk of incurring costs in the event a challenge is filed pursuant to Section 2937. As set forth *supra* at Part I.B.2, Pennsylvania has no legitimate interest in requiring the Minor Parties to assume such a risk. Accordingly, this factor also weighs in favor of granting preliminary relief.

**IV.     The Public Interest Weighs in Favor of Granting the Minor Parties Preliminary Relief.**

The Supreme Court has observed that minor party and independent candidacies "are often important channels through which dissent is aired," and therefore, that "all political ideas cannot and should not be channeled into the programs of our two major parties." *See Williams*, 393 U.S. at 39 (citation omitted). Thus, the Third Circuit has concluded:

> In the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights, including the voting and associational rights of alternative political parties, their candidates and their potential supporters.

*Council of Alternative Political Parties v. Hooks*, 121 F.3d at 883-84. As set forth herein, Pennsylvania does not have any legitimate, much less compelling interest in threatening all minor party and independent candidates with substantial costs if they defend nomination petitions they submit as required by Section 2911(b). Accordingly, consistent with the public interest, the Minor Parties' constitutional rights can and should be protected by the granting of the preliminary injunctive relief requested herein.

## CONCLUSION

Because all relevant factors weigh decisively in favor of granting the Minor Parties preliminary relief, Plaintiffs' Motion for a Temporary Restraining Order or Preliminary Injunction should be granted.

Dated: August 7, 2012          Respectfully submitted,


                               s/Oliver B. Hall
                               Oliver B. Hall*
                               CENTER FOR COMPETITIVE DEMOCRACY
                               P.O. Box 21090
                               Washington, D.C. 20009
                               (202) 248-9294 (ph)
                               (202) 248-9345 (fx)
                               oliverhall@competitivedemocracy.org

                               *Counsel for Plaintiffs*

                               *Motion for Admission Pro Hac Vice Pending

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CONSTITUTION PARTY OF PENNSYLVANIA, THE GREEN PARTY OF PENNSYLVANIA, THE LIBERTARIAN PARTY OF PENNSYLVANIA, JOE MURPHY, JAMES N. CLYMER, CARL J. ROMANELLI, THOMAS ROBERT STEVENS and KEN KRAWCHUK,<br><br>　　　　　　　*Plaintiffs*,<br><br>　　v.<br><br>CAROL AICHELE, JONATHAN M. MARKS and LINDA L. KELLY,<br><br>　　　　　　　*Defendants*. | Case No. 1:12-CV-02726 |

**ORDER**

AND NOW, this _____ day of August, 2012, upon consideration of Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction, and any Opposition filed thereto, IT IS HEREBY ORDERED that the motion is GRANTED.

IT IS FURTHER ORDERED that Defendant Carol Aichele and Defendant Jonathan M. Marks are hereby ENJOINED from enforcing the signature requirement imposed by 25 P.S. § 2911(b), as applied to the nomination petitions submitted by Plaintiffs Constitution Party of Pennsylvania, Green Party of Pennsylvania and Libertarian Party of Pennsylvania for inclusion on Pennsylvania's November 6, 2012 general election ballot.

　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　/s/Lawrence F. Stengel
　　　　　　　　　　　　　　　LAWRENCE F. STENGEL, J.

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August, 2012, I caused the foregoing Motion for Temporary Restraining Order or Preliminary Injunction, on behalf of all Plaintiffs, by means of the Court's CM/ECF system, upon the following:

Sean A. Kirkpatrick
Deputy Attorney General
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120

*Counsel for Defendants*