# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CONSTITUTION PARTY                      :
OF PENNSYLVANIA, *et al.*                   :     **Case No. 1:12-CV-02726**
       **Plaintiffs**    :
                  :
       **v.**           :     **(Judge Stengel)**
                  :
CAROL AICHELE, *et al.*                     :
       **Defendants**   :

# O R D E R

    **AND NOW**, this _____ day of _____ 2012, upon consideration of Plaintiffs' Motion for

Temporary Restraining Order or Preliminary Injunction (Doc. 12), and all responsive papers

thereto, **IT IS HEREBY ORDERED** that the motion is **DENIED**.


                          BY THE COURT:


                          _____
                          Lawrence F. Stengel, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE CONSTITUTION PARTY** | : | |
| **OF PENNSYLVANIA,** *et al.* | : | **Case No. 1:12-CV-02726** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Judge Stengel)** |
| | : | |
| **CAROL AICHELE,** *et al.* | : | |
| **Defendants** | : | **ELECTRONICALLY FILED** |

---

**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

---

Respectfully submitted,

LINDA L. KELLY
Attorney General

SEAN A. KIRKPATRICK
Deputy Attorney General
I.D. #92960

GREGORY R. NEUHAUSER
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
15th Fl., Strawberry Square
Litigation Section
Harrisburg, PA 17120
(717) 783-1471

DATED: August 22, 2012

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     PROCEDURAL HISTORY........................................................................................ 2

III.    STATEMENT OF RELEVANT FACTS ................................................................... 4

IV.     ARGUMENT ............................................................................................................. 6

        A.      Plaintiffs lack standing to seek injunctive relief. ......................................... 6

        B.      The Court should abstain from exercising jurisdiction over this matter
                Based pursuant to the *Younger* Abstention Doctrine........................................ 10

        C.      Plaintiffs cannot establish any of the elements necessary to obtain
                A preliminary injunction.................................................................................. 11

                1.      Plaintiffs Fail to Plead Any Irreparable Harm. ................................. 12

                2.      Plaintiffs Fail to Show a Likelihood of Success on the Merits............... 13

                        a.      *The Judiciary's Assessment of Costs and Fees Against Minor
                                Party Candidates Under § 2937 Does Not Violate Their
                                Rights Under the First and Fourteenth Amendment*.................... 14

                        b.      *The Judiciary's Possible Assessment of Costs and Fees
                                Against Minor Party Candidates Under §2937 Does Not
                                Violate Their Rights to Equal Protection Under the
                                Fourteenth Amendment.* ............................................................. 18

                3.      Preliminary Injunction Is Not In The Public Interest and Would
                        Injury the Parties Challenging the Nomination Papers.......................... 19

CONCLUSION.................................................................................................................... 20

CERTIFICATE OF SERVICE

## I.    <u>INTRODUCTION</u>

The instant Motion for Restraining Order and/or Temporary Injunction, filed nearly three months after the initiation of this action, is a blatant attempt to circumvent the Third Circuit Court of Appeal's holding in *Rogers v. Corbett*, 468 F.3d 188, 197 (3d Cir. 2006), which has already determined that the signature requirement of 25 P.S. § 2911(b) passes constitutional muster.  In their motion, Plaintiffs challenge the portion of 25 P.S. § 2937 that permits the Commonwealth Court to award costs to the prevailing party in a nomination paper challenge, yet Plaintiffs seek an order enjoining the enforcement of § 2911(b)'s signature requirement, potentially permitting otherwise unqualified candidates immunity from challenges by third parties.  (Doc. 8 at 2.)  Such extraordinary relief is unwarranted on numerous grounds.

First, Plaintiffs lack standing to bring this action, they have yet to suffer any injury.  The mere possibility that the Commonwealth Court could award costs or fees at some indefinite time in the future does not constitute an injury-in-fact.

Second, the request Plaintiffs seek would interject this Court into two ongoing state judicial proceedings, in contradiction to the *Younger* Abstention Doctrine.

Third, Plaintiffs fail to allege any irreparable harm.  The only possible harm under § 2937 is merely a future economic injury, which does not grant Plaintiffs standing let alone rises to the level of irreparable harm.

Finally, Plaintiffs' First and Fourteenth Amendment challenges are fatally premised upon analogizing the cost shifting authority granted to the courts by § 2937 with a mandatory candidate filing fee to appear on the ballot.  Unlike the cases that found such a mandatory filing fee unconstitutional where it did not provide an alternative for indigent candidates, § 2937 allows the court to consider the financial status of the losing party.  More to the point, unlike a mandatory filing fee, § 2937 only affects individuals not qualified to be a candidate because they

failed to file enough valid signatures to overcome a challenge.  A candidate  who carefully reviews his or her nomination papers and signatures to ensure accuracy and completeness has nothing to fear from § 2937, and if challenged, could potentially use § 2937 to recover some defense costs.

Plaintiffs seek to avoid the signature requirement of § 2911(b) premised upon the mere possibility that the Commonwealth Court could award fees against them pursuant to § 2937 sometime in the future.  Plaintiffs' lack of confidence in their own nomination papers does not grant them standing or articulate a valid injury in fact, let alone warrant the extraordinary and immediate relief requested in their motion.  For the following reasons, Plaintiffs' motion should be denied.

## II.    PROCEDURAL HISTORY

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality of portions of the Pennsylvania Election Code governing the conduct of minor political parties, political bodies, and their candidates for public office.  The plaintiffs are the Constitution Party of Pennsylvania and its chair, Joe Murphy; the Green Party of Pennsylvania and its chair, Carl Romanelli; the Libertarian Party of Pennsylvania and its chair, Thomas Robert Stevens; James Clymer, a member of the Constitution Party of Pennsylvania, and Ken Krawchuk, a former candidate of the Libertarian Party of Pennsylvania.  (Complaint at ¶¶ 1-8.)  The defendants are Carl Aichele, Secretary of the Commonwealth of Pennsylvania; Jonathan Marks, Commissioner of the Pennsylvania Department of State's Bureau of Commissions, Elections, and Legislation; and Linda Kelly, Attorney General of the Commonwealth of Pennsylvania.  (Compl. at ¶¶ 9-11.)

In their Complaint, Plaintiffs allege that Pennsylvania's Election Code substantially burdens "minor party" and "political body" candidates in two ways. First, they allege that 25 P.S. § 2937 (Section 977 of the Election Code), is unconstitutional because it permits the Pennsylvania courts to impose costs against political candidates who are unable to defend their nomination petitions against a challenge by a private third-party. Plaintiffs allege that this ability to impose costs violates their First and Fourteenth Amendment rights to freedom of speech, petition, assembly and association for political purposes, and due process of law. Plaintiffs allege that this mere possibility of the imposition of costs by the courts is unconstitutional on its face (Count III) and as applied to them (Count I).

Second, Plaintiffs allege that 25 P.S. § 2937 treats major party candidates (Democratic and Republican) differently from minor party and political body candidates. Major party candidates have their names placed on the ballot through the primary system, whereas Plaintiffs must obtain signatures on nomination papers to be placed on the ballot. Plaintiffs allege that this violates their equal protection rights under the Fourteenth Amendment and is unconstitutional as applied to them. (Count II.) Plaintiffs seek a declaration holding 25 P.S. 2911(b) and 25 P.S. § 2937 unconstitutional as applied to them; 25 P.S. § 2937 unconstitutional on its face; and an injunction enjoining Secretary Aichele and Commissioner Marks from enforcing the signature requirement imposed by 25 P.S. § 2911(b). (Compl. at ¶ 20.)

On July 25, 2012, Defendants filed a Motion to Dismiss the Complaint on the grounds that Plaintiffs lacked standing, the matter was not ripe, and that Plaintiffs failed to state a viable claim upon which relief could be granted. (Doc. 8.) On July 26, 2012, Plaintiffs filed an uncontested motion for an extension of time to respond to Defendants' Motion to Dismiss. (Doc. 9.) In that motion, Plaintiffs' counsel averred that an extension was necessary because he "is

3

traveling for an out-of-state hearing in another matter from July 30, 2012 through August 1, 2012. The undersigned counsel also has an appellate brief due in a different case on August 10, 2012. This leaves insufficient time to prepare an adequate Opposition to Defendants' Motion to Dismiss in this matter." (*Id.* at 2.) The Court granted Plaintiffs' motion and extended the date to respond until August 27, 2012. (Doc. 11.)

On August 8, 2012[1], Plaintiffs filed a Motion for Temporary Restraining Order and/or Preliminary Injunction. (Doc. 12.) Defendants respectfully submit this brief in opposition to that motion.

## III.    STATEMENT OF RELEVANT FACTS

Pennsylvania has a two-track system for candidates of political parties to be placed on the General Election ballot. The first track is for major political parties. *See* 25 P.S. §§ 2831(a) (defining political parties) and 2861-83 (providing for nomination of political party candidates at primaries). Based on voter registrations, the Democratic Party and Republican Party are the only major political parties in Pennsylvania at this time. The Democratic and Republican parties generally place their candidates on the November ballot through the primary process. 25 P.S. §§ 2861-83.

The second track for candidates to be placed on the ballot is by filing nomination papers. All candidates who are not members of a major political party (*e.g.*, minor political parties, political bodies, and independents) must file nomination papers to have their names placed on the General or Municipal Election ballot. These candidates must obtain signatures on nomination papers equaling at least two percent of the largest entire vote cast for an elected

---

[1] The motion is dated August 7, 2012. However, the docket reveals that the motion was not filed or served via the electronic case filing system until the following day, August 8, 2012.

candidate in the state at large at the last preceding election at which statewide candidates were

voted for.  *See* 25 P.S. § 2911(b).

The first day to circulate nomination papers is the tenth Wednesday prior to the primary.[2]

*See* 25 P.S. § 2913(b).  Nomination papers must be filed on or before August 1st of each election

year.[3]  *See* Consent Decree entered in *Hall v. Davis*, No. 84-1057 (E.D. Pa.); and Consent Decree

entered in *Libertarian Party of Pennsylvania  v. Davis*, No. 84-0262 (M.D. Pa.).  After the filing

of nomination papers, private parties have seven days to file objections challenging the validity

of the signatures collected.  *See* 25 P.S. § 2937.  The Commonwealth Court of Pennsylvania then

reviews any objections and determines whether the name of the candidate should be placed on

the ballot or stricken.[4]  25 P.S. § 2937.  Any party aggrieved by the decision of Commonwealth

Court may then file an appeal as of right to the Supreme Court of Pennsylvania.  42 Pa. C.S.

§ 723(a); Pa. R.A.P. No. 1101(a)(1).  Section 2937 provides in relevant part that "[i]n case any

such petition is dismissed, the court shall make such order to the payment of the costs of the

proceedings, including witness fees, as it shall deem just."  25 P.S. § 2937.

On or before August 1, 2012, the Libertarian Party, Constitution Party, and Green Party

filed nomination papers on behalf of their candidates with the Department of State.  Third party

---

[2]   The primary election in Presidential election years is the fourth Tuesday in April.  For non-Presidential elections, the primary is the third Tuesday in May.  *See* 25 P.S. § 2753(a).

[3]   Under the terms of 25 P.S. §§ 2913(b) and (c) (Section 953(b) and (c) of the Election Code), the filing deadline is the second Friday after the primary election.    For 2008, the filing deadline under the statute would have been Friday, May 2nd.  However, under the two consent decrees entered in *Hall v. Davis*, No. 84-1057 (E.D. Pa.) and *Libertarian Party of Pennsylvania  v. Davis*, No. 84-0262 (M.D. Pa.), the filing deadline was extended by three additional months until August 1st.

[4]   The Commonwealth Court's original jurisdiction in election matters is limited to issues relating to state offices.  42 Pa. C.S. § 764.  Objections to nomination papers for local offices are reviewed by the courts of common pleas.  42 Pa. C.S. § 931.

objectors timely filed challenges to the nomination papers of the candidates of the Constitution Party and Libertarian Party in the Commonwealth Court.  *See In re Nomination Papers of Margaret K. Robertson, et al.*, 507 M.D. 2012 (Pa. Commwlth. Ct. 2012) (Libertarian Party); *In re Nomination Papers of Virgil H. Goode, et al.*, 508 M.D. 2012 (Pa. Commwlth. Ct. 2012) (Constitution Party).[5]  These challenges are currently ongoing.  No challenges to the nomination papers of the Green Party candidates were timely filed.

IV.   <u>**ARGUMENT**</u>

    A.   <u>**Plaintiffs lack standing to seek injunctive relief.**</u>

Before the Court may proceed to the merits of any civil case, it must first determine whether Plaintiffs have standing.  *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see also Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) ("Invoking the power of the federal judiciary requires more than important issues and able litigants").  As discussed in Defendants' Motion to Dismiss, Plaintiffs lack standing to seek injunctive relief. (Doc. 8 at 6-9.)  So as to not burden the Court with repetitive briefing, Defendants will incorporate by reference the arguments made in their motion to dismiss.  As discussed in that brief, Plaintiff cannot demonstrate injury-in-fact, traceability, or redressability.  *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009).

The mere fact that candidates for the Plaintiff political parties have filed nomination papers, only two of which have been challenged, does not repair Plaintiffs' lack of standing in this case.  "As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint . . . .  The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its

---

[5]    None of the individual plaintiffs filed nomination papers which were challenged.

standing."  *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005) (quotation

marks and citations omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4

(1992) (stating that " '[t]he existence of federal jurisdiction ordinarily depends on the facts *as*

*they exist when the complaint is filed* ' " and rejecting argument that events which occurred after

filing "retroactively created a redressability (and hence a jurisdiction) that did not exist at the

outset" (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) (emphasis in

*Lujan*))).  Therefore, the Court must address Plaintiffs' standing at the time they filed their

complaint, before the Constitution and Libertarian parties filed any nomination papers or had

those papers challenged.  As the filing of their Complaint, none of the Plaintiffs had nomination

papers pending and no challenges had yet been made.  As the Court has already found under

remarkably similar facts in a prior case, the mere threat that non-parties *might* seek costs and the

Commonwealth Court *might* impose those costs cannot support Article III standing, as "[t]his

threat . . . is 'conjectural or hypothetical,' not 'actual and imminent.'"  *Constitution Party of*

*Penn. v. Cortes*, 712 F.Supp.2d 387, 396 (E.D. Pa. 2010).

However, even if the Court was to improperly analyze Plaintiffs' standing based upon

facts that exist today, Plaintiffs still would not possess the necessary injury-in-fact, traceability,

or redressability necessary to establish standing.  First, only the Constitution and Libertarian

Parties' candidates potentially face costs under § 2937.  The remaining plaintiffs have no

pending papers facing a challenge.  Second, the mere challenge of the nomination papers does

not state a "concrete and particularized" injury in fact necessary to establish Article III standing.

*Berg*, 586 F.3d at 239.  "Allegations of 'possible future injury' are not sufficient to satisfy

Article III."  *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011).  As explained by the Third

Circuit, an alleged injury is too speculative where it cannot be explained without the use of the

word "if."  *Reilly*, 664 F.3d at 43; *see also Harris v. Corbett*, Civ. No. 1:11–CV–2228, 2012 WL 1565357 at *9-10 (M.D. Pa. May 2, 2012) (Jones, J.).

Even today, the risk that some of the Constitution and Libertarian Party candidates may incur fees and costs under § 2937 is neither actual nor imminent.  These candidates will only face sanctions under the challenged statutes *if* enough of their signatures are invalid as to disqualify them, *if* the challenges seek costs, and *if* the Commonwealth Court decides to award costs and fees based upon some just cause under the circumstances.  Such a hypothetical series of events premised upon multiple layers of "ifs" cannot serve as the foundation for an Article III controversy.

Further, Plaintiffs' allegation that they are intimidated by the mere possibility of fees from defending the challenged nomination papers in court is likewise too conjectural and hypothetical to support Article III standing.  *Constitutional Party of Pennsylvania,* 712 F.Supp.2d at 396.  These fears are entirely dependent upon the actions of Plaintiffs, the outcome of the challenges, and whether the Commonwealth Court finds that the imposition of costs is just under the circumstances.  Future injury dependent upon Plaintiffs' own actions and that of non-parties is not the injury in fact necessary to support standing.   *See In re McNeil Consumer Healthcare*, 2012 WL 2885932, *18 (E.D. Pa. July 30, 2012) (*citing Alston v. Advanced Brands & Imp. Co.*, 494 F.3d 562, 565 (6th Cir.2007) (no standing where injury is caused not by the defendants' conduct but instead by third parties "accountable for their own actions"); *Frank Krasner Enters., Ltd. v. Montgomery Cnty., Md.*, 401 F.3d 230, 235 (4th Cir.2005) (the plaintiff may not satisfy "one or more of the essential elements of standing . . . [based upon] unfettered choices made by independent actors").

Moreover, the Court has already held that Defendants do not "have the power to change the law. . . .  The Executive Defendants simply administer the process created by statute." *Constitution Party*, 712 F.Supp.2d at 397.  "Plaintiffs have not alleged the defendants have the power to challenge a nomination paper and have not alleged sufficient facts to establish defendants have threatened, or could threaten, plaintiffs with an assessment of costs absent a challenge to a nomination paper.  Only private individuals may challenge a non-major party candidate's nomination paper." *Id.*  Neither the law nor Plaintiffs' allegations on this point have changed.

Finally, the redressability prong of Article III standing "requires a showing that 'the injury will be redressed by a favorable decision.'"  *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).  In the prior action, the Court found that no redressability existed because "[t]he court would have to assume . . . the nomination paper would be held invalid, the challenger would seek costs, and the costs would be assessed." *Constitution Party*, 712 F.Supp.2d at 398.  As already discussed above, Plaintiffs in the instant action have failed to allege any new facts that would cure this fatal defect in their case.  Once again, Plaintiffs improperly seek what amounts to an advisory opinion from this Court on hypothetical facts. *Id.* ("Courts are 'without power to give advisory opinions.'" (quoting *Rhone-Poulenc-Surfactants and Specialties, L.P. v. C.I.R.*, 249 F.3d 175, 182 (3d Cir. 2001)).

As Plaintiffs lack Article III standing to bring this action, they are not entitled to any preliminary relief, their motion should be denied, and the case should be dismissed.

9

**B.** **The Court should abstain from exercising jurisdiction over this matter based pursuant to the *Younger* Abstention Doctrine.**

Even if the Court had jurisdiction, the Court should nevertheless abstain from exercising its jurisdiction over this case pursuant to the *Younger* Abstention Doctrine.  *See Younger v. Harris*, 401 U.S. 37 (1971).

> Abstention under *Younger* is warranted when (1) there is a pending state proceeding that is judicial in nature; (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceeding for the plaintiff to raise his constitutional challenges.

*Wilson v. Dows*, 390 Fed.Appx. 174, 177 (3d Cir. 2010).  "The Younger abstention doctrine reflects 'a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.'"  *Id.* (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431 (1982)).  The "burden [of whether the state court provides an adequate forum] rests on the federal plaintiff to show that state procedural law barred presentation of its claims."  *Pennzoil Co. v. Texaco, Inc*. 481 U.S. 1, 14-15 (1987).

In this matter, there are currently two pending state proceedings in the Pennsylvania Commonwealth Court regarding the Libertarian Party and Constitution Party's nomination papers.  *See In re Nomination Papers of Margaret K. Robertson, et al.*, 507 M.D. 2012 (Pa. Commwlth. Ct. 2012) (Libertarian Party); *In re Nomination Papers of Virgil H. Goode, et al.*, 508 M.D. 2012 (Pa. Commwlth. Ct. 2012) (Constitution Party).  These proceedings implicate the very important state interest of ensuring that candidates comply with election laws and that only qualified candidates are placed on the ballot.  Further, if the ongoing challenges to the nomination papers are successful and fees and costs are sought, the Libertarian and Constitution Parties will have a full opportunity to raise all of their constitutional challenges to § 2937 before the Commonwealth Court.  *See In re Farnese*, 17 A.3d 357, 609 Pa. 543, 569-70 (2011) (not

reaching constitutional challenge to § 2937 only after reversing the award of fees on other

grounds).  Plaintiffs seek to interject this Court into these two ongoing Commonwealth Court

proceedings, an invitation the Court should reject.  Rather, the Court should refrain from

exercising jurisdiction over this case pursuant to the *Younger* Abstention Doctrine, deny

Plaintiffs' motion, and dismiss this case.

> C.    Plaintiffs cannot establish any of the elements necessary to obtain a preliminary
>       injunction.

It is well-established in this circuit that preliminary injunctive relief is "an extraordinary

remedy which should be granted only in limited circumstances." *AT&T v. Winback & Conserve

Program*, 42 F.3d 1421, 1426–1427 (3d Cir. 1994) (internal quotation omitted.)  Equally well-

known are the four elements the movant must demonstrate:

(1)    likelihood of success on the merits;

(2)    irreparable harm resulting if the relief requested is not granted;

(3)    absence of harm to the non-moving party and other interested persons if relief is
       granted; and

(4)    the public interest.

*See Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806, 812–813 (3d Cir. 1989);

Fed.R.Civ.P. 65.  The grant of injunctive relief is not a matter of right, and the moving party

bears the burden of demonstrating the need for this extraordinary relief.  *Spartacus, Inc. v.

McKees Rocks*, 694 F.2d 947, 949 (3d Cir.1982).  Although the moving party must present

evidence "sufficient to convince the trial judge that all four factors favor preliminary relief",

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir.1990)), the first

two criteria are essential.  *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989); *In Re Arthur

Treacher's Franchise Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("a failure to show a likelihood

of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a

preliminary injunction"). Plaintiffs cannot demonstrate a likelihood of success on the merits or irreparable harm. Contrariwise, the relief Plaintiff seek – an order enjoining Defendants from enforcing the signature requirements of § 2911(b) – is extremely overbroad, is unconnected with a challenge to § 2937, and would harm the public interest.

            1.    <u>Plaintiffs Fail to Plead Any Irreparable Harm.</u>

Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Courts are instructed not to grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." *Id.* Thus, "[s]peculative injury does not constitute a showing of irreparable harm." *Milhouse v. Bledsoe*, No. 09-1953, 2011 WL 5520303, *2 (M.D. Pa. Nov. 14, 2011) (citing *Continental Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 356 (3d Cir.1980)).

First, the hypothetical assessment of future costs and/or fees by the Commonwealth Court is too speculative to support standing, let alone irreparable injury. The Commonwealth Court may only assess fees under § 2937 if the Constitution and Libertarian Party candidates lose the nomination paper challenges, and only if the court finds that cost shifting is just under the circumstances. *See In re Farnese*, 17 A.3d at 369-370. Unless the Constitution and Libertarian Party candidates filed fraudulent nomination papers in bad faith or plan to commit some other inappropriate conduct, the future imposition of fees by the court is speculative and entirely dependent upon the future actions Plaintiffs, non-parties, and the outcome of state court proceedings.

Second, the only injury the Constitution and Libertarian Party candidates could potentially face is an economic loss. "Economic loss does not constitute irreparable harm[.]" *Acierno v. New Castle*, 40 F.3d 645, 653 (3d Cir. 1994) ("Mere injuries, however substantial, in

terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (citations omitted).

Third, Plaintiffs improperly conflate their challenge to § 2937 with § 2911(b).  The Third Circuit has already upheld Pennsylvania's system of requiring minor party candidates to obtain signatures on nomination papers in order to have their names placed on the ballot.  *Rogers v. Corbett*, 468 F.3d 188, 197 (3d Cir. 2006).  Therefore, Plaintiffs' attempt to seek a Court order excusing them from complying with § 2911(b)'s signature requirement (Doc. 12 at 2) must be rejected.  Even if the cost provision of § 2937 was unconstitutional (which it is not), the proper relief is not to excuse Plaintiffs from the signature requirements of § 2911. [6]

As Plaintiffs face, at most, a hypothetical economic loss sometime in the future, Plaintiffs fail to plead or otherwise demonstrate any irreparable harm.

      2.    <u>Plaintiffs Fail to Show a Likelihood of Success on the Merits.</u>

Plaintiffs fail to show any likelihood of success on the merits of their case, as they fail to state a viable cause of action.  "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *In Re Arthur*, 689 F.2d at 1143.  Plaintiffs raise two claims in their Complaint, neither of which states a viable claim upon which relief can be granted.

---

[6]    District courts granting injunctions should craft remedies "no broader than necessary to provide full relief to the aggrieved plaintiff."  *McLendon v. Continental Can Co.*, 908 F.2d 1171, 1182 (3d Cir. 1990).

a.     *The Judiciary's Assessment Of Costs And Fees Against Minor Party Candidates Under § 2937 Does Not Violate Their Rights Under The First and Fourteenth Amendment.*

The United States Supreme Court has held that "[a]lthough these rights of voters [the right to vote and to political association] are fundamental, not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).  Further, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id.* (citation omitted).  The Pennsylvania Supreme Court has already reviewed the challenged section of the Election Code and found that "the cost provision in Section 2937 does not impinge upon any constitutional rights in a way that would warrant constitutional scrutiny." *Nader*, 905 A.2d at 459.  That decision and the Third Circuit decision in *Rogers v. Corbett* wisely found that the Commonwealth may impose reasonable requirements on individuals seeking to placement on the ballot.  More to the point, the United States Constitution certainly does not guarantee a candidate the right to commit election fraud or prohibit a state court from, in its discretion, imposing fees and costs on a party. [7]

_____

[7] Plaintiffs fail to proffer even a single example where a candidate was assessed costs under § 2937 without a corresponding finding of either bad faith or refusal to comply with the court orders.  Rather, the Pennsylvania Supreme Court specifically rejected reading § 2937 as permitting the automatic award of fees to a prevailing party.  *In re Farnese ,* 17 A.3d at 369.  But even if the Commonwealth were to enact a statute that forced candidates who lose a challenge to pay the reasonable costs and fees of the challenger (akin to the English Rule), such a rule would not offend the United States Constitution.  Rather, it would merely encourage candidates to ensure that their nomination papers were in proper order before submission and discourage a flippant attitude towards the high honor of running for office.

Plaintiffs' reliance upon cases involving mandatory filing fees for candidates is misguided.  The cost provisions of § 2937 does not prevent a qualified candidate from getting his or her name on the ballot.  The cost shifting permitted under § 2937 only becomes a possibility for individuals who do not submit the requisite number of valid signatures.  Thus, candidates with actual support in the electorate can immunize themselves from risk of cost shifting by ensuring that they submit enough valid signatures.

In *In re Farnese,* the Pennsylvania Supreme Court rejected the reading of § 2937 that permitted the automatic award of costs to the prevailing party.  *In re Farnese* , 17 A.3d at 369-70.  Rather, the Pennsylvania Supreme Court determined that "the General Assembly contemplated that the courts would bottom decisions to assess costs upon the facts and policy concerns surrounding each individual election matter, rather than simply awarding costs to the prevailing party."  *Id.* at 371.  Accordingly, the court instructed the Commonwealth Court to "assess the particular facts, the nature of the litigation, and other consideration as may appear relevant" before granting costs under § 2937.  *Id.* at 372.  Thus, the imposition of fees under § 2937 is not automatic or even permitted without a finding by the Commonwealth Court that the defeated party performed some action during the litigation that warrants cost shifting usually excluded under the American Rule.  Thus, any analogy to a mandatory fee or obstacle to the ballot is without foundation.

The challenged provision in § 2937 merely provides the Commonwealth Court with authority to sanction inappropriate behavior during the nomination challenge.  *In re Farnese*, 17 A.3d at 372.  Permitting the judiciary to assess fees and costs at the close of a judicial proceeding does not serve as a financial obstacle to the ballot any more than the Federal Rules of Civil

Procedure 11 and 54(d) serve as an obstacle to access the courts.[8]  In both situations, the courts are given the authority to access fees and costs to the prevailing party when appropriate and just under the circumstances, including the indigent nature of the losing party.

The ability of courts to impose costs is essential to the smooth operation of elections. Any burden to qualified minor party candidates (which is none) is outweighed by the Commonwealth's substantial interest in ensuring that only those candidates who have met the requirements established by the Legislature have their names placed on the ballot and the smooth operations of challenges in the Commonwealth Court.  As the Supreme Court stated in *Burdick v. Takushi*, 504 U.S. 428, 440 n.10 (1992), "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable."

Without the cost assessment provisions contained in § 2937, there would be nothing to prevent the filing of frivolous, fraudulent, and/or patently deficient nomination papers by minor party candidates.  While minor party candidates do have a constitutionally protected right to have their names placed on the ballot, other candidates and the voters at large have a similar right to make sure that the election laws are complied with.  Section 2937 is fair to both minor party candidates and those who challenge their nomination papers.  It gives the courts the authority to award costs to those who successfully challenge the filing of nomination papers as well as costs to the candidate if the challenge is unsuccessful.  Section 2937 is neither automatic nor blind to the relative positions of the parties; rather, it permits the court to consider all relevant facts before awarding fees, such as the conduct of the parties and the financial status of the losing

---

[8]  The Pennsylvania Rules of Civil Procedure have a similar provision.  *See* Pa. R. Civ. P. No. 1023.1.  If Plaintiffs' argument that the mere possibility of sanctions violates the First Amendment, no court would have the power to sanction inappropriate behavior.  Such an extreme reading of the First amendment is without support.

party.  See *In re Farnese*, 17 A.3d at 371-72 (the Commonwealth Court is required to "assess the particular facts, the nature of the litigation, and other considerations as may appear relevant.").

Section 2937 is consistent with the inherent authority of the court to control proceedings before it as necessary for the efficient operation of the judiciary, outweighing any minimal chilling effect on the First Amendment rights of minor party candidates.  In *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), the United States Supreme Court stated that a court may – even absent any statutory authority – "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Id.* at 45-46 (quoting *Alyeska v. Pipeline Sercice Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975)).  *See also Gillette Foods Inc. v. Bayernwald-Fruchteverwertung*, 977 F.2d 809, 813 (3d Cir. 1992).

There is no question that minor party candidates seeking to be placed on the ballot are engaged in protected activity under the First Amendment.  Moreover, there is a general right to access the courts and petition the government which gives First Amendment protection to all citizens.  *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).  Accordingly, if the plaintiffs' position were correct, the ability of the courts to impose sanctions in all cases would be undermined and rendered impotent since they might create a "chilling" effect for others who seek to enforce their rights before the courts.  However, the courts' power to impose sanctions has been upheld even where it has been claimed that the plaintiff's constitutional rights have been violated.  *See Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988) (upholding sanctions of attorneys fees under Rule 11 in *Bivens* action as not "violat[ing] public policy concerns by chilling attorney incentives to file civil rights cases" where complaint was legally frivolous).  There is simply no reason why

17

courts should be foreclosed from imposing sanctions or costs in election cases while they are permitted to do so in all other types of cases.

For the above reasons, §§ 2911(b) and 2937 do not violate the First or Fourteenth Amendments.

> **b.**   *The Judiciary's Possible Assessment Of Costs And Fees Against Minor Party Candidates Under § 2937 Does Not Violate Their Rights to Equal Protection under the Fourteenth Amendment.*

Plaintiffs' argument that the mere possibility of assessment of costs and fees by the judiciary if their nomination papers were successfully challenged pursuant to 25 P.S. § 2937 unequally burdens minor party candidates is likewise without foundation.  Under the traditional equal protection analysis, only suspect classes and fundamental rights receive intermediate or strict scrutiny.  *Biener v.* Calio, 361 F.3d 206, 215 (2004).  As Plaintiffs are not a suspect classes and a cost shifting provision does not infringe upon a fundamental right, *see Biener*, 361 F.3d at 215 (citing *Admaas v. Askew*, 511 F.2d 700, 703 (5th Cir. 1975), the Court should utilize the rational basis test in analyzing Plaintiffs' equal protection claims.  Courts have long recognized the state substantial interest in keeping ballots manageable, *see Lubin v. Panish* 415 U.S. 709, 715 (1974), and the courts' inherent power to impose sanctions, *see Napier*, 855 F.2d at 1091.  These interests clearly meet the low standard of review.

More to the point, Plaintiffs' allegation that § 2937 treats minor party and political body candidates differently from major party candidates finds no support in the statute or case law.  Section 2937 provides that in cases where objections to nomination papers are filed, the courts shall enter an "order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just."  25 P.S. § 2937.  The Pennsylvania Supreme Court has interpreted this provision as applying to both "nomination petitions" (filed by major party candidates) and

"nomination papers" (filed by minor party candidates).  *In re Nader*, 588 Pa. 450, 905 A.2d 450 (2006).  A major party candidate must file nomination petitions to be placed on the ballot.  If the candidate's nomination petitions are successfully challenged, he or she can be subject to costs pursuant to § 2937.  *See In re Lee*, 578 A.2d 1277, 1279 n.3 (Pa. 1990).

As § 2937 applies equally to both major party and minor party/political body candidates alike, Plaintiffs' equal protection claim fails.

3. <u>Preliminary Injunction Is Not in the Public Interest and would Injury the Parties Challenging the Nomination Papers.</u>

Granting Plaintiff the extremely broad extraordinary relief they seek would injury the individuals who have properly filed challenges to the Libertarian Party and Constitution Party candidates in the Commonwealth Court.  These individuals should have the ability to seek fees and costs unnecessarily incurred due to the improper conduct of the candidate.  Prohibiting the Commonwealth Court from sanctioning inappropriate conduct within its own courtroom damages the integrity of the state courts and would encourage bad behavior by all parties.  Additionally, permitting the Libertarian and Constitution Party candidates to bypass the signature requirements of § 2911(b) injuries all of the other candidates running for public office who have properly complied with the requirements of Pennsylvania's Election Code, as well as the integrity of this year's elections.  The public has an interest in ensuring that only qualified candidates are placed on the ballot.  The public has an interest in ensuring that their ballots are not cluttered with the names of candidates unable to find the support of even 20,601 citizens in a Commonwealth with over 8 million registered voters.  Moreover, the public has an interest in permitting is courts to punish fraud, wasteful litigation practices, and other bad behavior.  Granting the request relief would injure each of these significant public interests and unfairly immunize Plaintiffs from legitimate challenges to their nomination papers.

V.     <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs lack standing to bring this action.  Additionally, Plaintiffs fail to allege irreparable harm or the likelihood of success on the merits.  For these reasons, Plaintiffs' motion should be denied and the complaint dismissed.

**Respectfully submitted,**

**LINDA L. KELLY**
**Attorney General**

By:     *s/ Sean A. Kirkpatrick*

**SEAN A. KIRKPATRICK**
**Deputy Attorney General**
**Attorney ID 92960**

**Office of Attorney General**
**15ᵗʰ Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 783-1471**
**Fax:     (717) 772-4526**
**GREGORY R. NEUHAUSER**
**Chief Deputy Attorney General**
**Chief, Civil Litigation Section**
<u>skirkpatrick@attorneygeneral.gov</u>

**Date:   August 22, 2012**

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE CONSTITUTION PARTY** | : | |
| **OF PENNSYLVANIA, ET AL.** | : | |
|                     **PLAINTIFFS** | : | **Case No. 1:12-CV-02726** |
| | : | |
|                     **v.** | : | **(Judge Stengel)** |
| | : | |
| | : | |
| **CAROL AICHELE, ET AL.** | : | |
|                     **DEFENDANTS** | : | |
| | : | **ELECTRONICALLY FILED** |

---

### CERTIFICATE OF SERVICE

I, Sean Kirkpatrick, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on August 22, 2012, I caused to be served a true and correct copy of the foregoing document via the Electronic Filing System to the following individual:

Oliver B. Hall
Center for Competitive Democracy
1835 16th Street N.W.
Washington, DC 20009
*(Counsel for Plaintiffs)*


    *s/ Sean A. Kirkpatrick*
**Sean A. Kirkpatrick**
Deputy Attorney General