IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTITUTION PARTY, et al., | : | CIVIL ACTION |
| Plaintiffs[1] | : | |
| | : | |
| vs. | : | NO. 12-2726 |
| | : | |
| CAROL AICHELE, et al., | : | |
| Defendants[2] | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                                                          March 8, 2013

For the second time in recent years, the plaintiffs brought an action alleging Pennsylvania's ballot access scheme violates rights guaranteed by the United States Constitution by forcing them to assume the risk of incurring substantial financial burdens if they defend nomination petitions they are required by law to submit.[3] The plaintiffs

---

[1] The plaintiffs are the Constitution Party of Pennsylvania and its chairman, Joe Murphy; the Green Party of Pennsylvania and its chairman, Carl Romanelli; the Libertarian Party of Pennsylvania and its chairman, Thomas Robert Stevens; James Clymer, a member of the Constitution Party; and Ken Krawchuk, a former candidate of the Libertarian Party. Since the filing of this action, the Constitution Party has decided to withdraw its nomination papers. The Green Party has not had its nomination papers challenged at all.

[2] The defendants include Carol Aichele, the Secretary of Pennsylvania; Jonathan Marks, the Commissioner of the Bureau of Commissions, Elections, and Legislation; and Linda Kelly, the Attorney General of Pennsylvania. On September 11, 2012, I granted the motion of six individuals to intervene as defendants in this action who had already filed timely objections in the Commonwealth Court of Pennsylvania to the nomination papers submitted by some of the plaintiffs. See Document #24. Those defendants are: Carol Sides, Richard J. Tems, Louis Nudi, Damon Kegerise, Anne Layng, and Judith Guise.

[3] I dismissed the previous case (5:09-cv-01691) finding that the plaintiffs had failed to present a case or controversy, as required by Article III of the Constitution. See The Constitution Party of PA, et al. v. Cortes, et al., 712 F.Supp. 2d 387 (E.D. Pa. 2010). The Third Circuit agreed and affirmed the dismissal. See The Constitution Party of PA ,et al. v. Cortes, et al., 433 Fed. Appx. 89 (3d Cir. 2011).

specifically allege that 25 P.S. § 2911(b), the provision requiring the submission of nomination petitions, and 25 P.S. § 2937, the provision authorizing the imposition of costs against candidates who defend such petitions, are unconstitutional as applied to them. The plaintiffs further allege that Section 2937 is unconstitutional on its face. They seek prospective declaratory relief and prospective injunctive relief only. The defendants filed a motion to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure. The intervenor-defendants filed a separate motion to dismiss and, in addition to their own arguments, incorporated the arguments set forth in the defendants' motion. After the plaintiffs responded, I held a hearing on the motions. For the following reasons, I will grant the motions to dismiss.

**I. BACKGROUND**

Under Pennsylvania law, a political body is qualified as a political party when one of its candidates obtains a two percent level of support in the preceding general election. Specifically, 25 P.S. § 2831(a) defines a political party as:

> Any party or political body, one of whose candidates at the general election next preceding the primary polled in each of at least ten counties of the State not less than two percentum of the largest entire vote cast in each of said counties for any elected candidate, and polled a total vote in the State equal to at least two per centum of the largest entire vote cast in the State for any elected candidate, is hereby declared to be a political party within the State.

Pennsylvania has a two-track system for candidates of political parties to be placed on the general election ballot. The first track is for major political parties. Based on voter registrations, the Democratic Party and the Republican Party are the only major

2

political parties in Pennsylvania at this time. The major political parties generally place their candidates on the November ballot through the publically-funded primary process. See 25 P.S. § 2862. Candidates who seek to appear on the Republican or Democratic primary election ballot must submit 2,000 valid signatures. See 25 P.S. § 2872.1. The winner of the primary election automatically appears on the general election ballot. See P.S. § 2882.

The second track for candidates to be placed on the November ballot is by filing nomination petitions with the Secretary of the Commonwealth. See 25 P.S. § 2872.2. All candidates who are not members of a major political party (e.g., minor political parties,[4] political bodies, and independents) must file nomination petitions to have their names placed on the general or municipal election ballot. Id. These candidates must obtain signatures on nomination papers equaling at least two percent of the largest entire vote cast for an elected candidate in the state at large at the last preceding election which included statewide candidates. See 25 P.S. § 2911(b).[5]

---

[4] Minor political parties are political parties with registered membership of less than fifteen percent of the combined state-wide registration for all political parties as of the close of the registration period immediately preceding the most recent November election. 25 P.S. § 2872.2.

[5] Title 25 of the Pennsylvania Statutes, Section 2911(b) provides: Where the nomination is for any office to be filled by the electors of the State at large, the number of qualified electors of the State signing such nomination paper shall be at least equal to two per centum of the largest entire vote cast for any elected candidate in the State at large at the last preceding election at which State-wide candidates were voted for. In the case of all other nominations, the number of qualified electors of the electoral district signing such nomination papers shall be at least equal to two per centum of the largest entire vote cast for any officer, except a judge of a court of record, elected at the last preceding election in said electoral district for which said nomination papers are to be filed, and shall be not less than the number of signers required for nomination petitions for party candidates for the same office. In cases where a new electoral district shall have been created, the number of qualified electors signing such nomination papers, for candidates to be

By statute, the first day to circulate nomination papers is the tenth Wednesday prior to the primary. Nomination petitions must be filed with the Secretary on or before August 1st of each election year. See 25 P.S. § 2913(a). The Secretary must examine the petitions and reject them if they contain material errors apparent on their face, if they contain material alterations, or if they lack the number of signatures required. See 25 P.S. § 2936. Nomination petitions accepted by the Secretary of the Commonwealth are deemed valid unless a private party files a petition challenging them and asking that they be set aside. The private parties have seven days to file objections challenging the validity of the signatures collected. See 25 P.S. § 2937. The Commonwealth Court of Pennsylvania then reviews any objections and determines whether the name of the candidate should be placed on the ballot or stricken. Id. Any party aggrieved by the decision of Commonwealth Court may then file an appeal as of right to the Supreme Court of Pennsylvania. Title 25 of the Pennsylvania Statute, Section 2937 provides that "[i]n case any such petition is dismissed, the court shall make such Order to the payment of the costs of the proceedings, including witness fees, as it shall deem just." If the private parties lose, however, the candidate can receive costs from the challenger. See In re Farnese, 948 A.2d 215 (Pa. Commw. 2008) (assessing costs against private individuals who unsuccessfully challenge a candidate's petition).

From February to July 2012, the minor parties collected signatures on nomination papers to qualify their candidates for placement on the ballot for the November 6, 2012

---

elected at the first election held after the creation of such district, shall be at least equal to two per centum of the largest vote cast in the several election districts, which are included in the district newly created, for any officer elected in the last preceding election.

General Election. To qualify for placement on that ballot, these minor parties were required under the Pennsylvania Election Code to submit nomination papers which contain at least 20,601 signatures. See 25 P.S. § 2911(b).

On August 1, 2012, the plaintiffs submitted the signatures that they had gathered seeking to nominate certain candidates. In reviewing these signatures, the intervening defendants allegedly discovered extensive irregularities and possible fraud. Accordingly, on August 8, 2012, they filed two separate challenges to the signatures with the Commonwealth Court, asking the court to set aside the nomination papers on the basis of pervasive fraud in the signature-collection process. One challenge involved the nomination papers of nominees of the Libertarian Party of PA, see In Re: Nomination Papers of Margaret K. Robertson, et al., 507 MD 2012 (Pa. Commw. 2012), and the second challenge involved the nomination papers of nominees of the Constitution Party of PA, see In Re: Nomination Papers of Virgil H. Goode, et al., 508 MD 2012 (Pa. Commw. 2012). No such challenge was brought against the nomination papers of nominees of the Green Party of PA. It is interesting to note that on October 10, 2012, the Commonwealth Court of Pennsylvania, finding that the Libertarian Party had presented 20,730 valid signatures, dismissed the petition to set aside the party's nomination papers, and ordered the Secretary of the Commonwealth to certify the candidacy of the candidates for that party. Robertson, et al., 507 MD 2012. After a stipulated petition to withdraw the nomination papers in the case challenging the nomination papers of the Constitution Party, the Commonwealth Court ordered the Secretary of the Commonwealth to strike the names of that party's nominees from the general election

ballot.  Virgil H. Goode, et al., 508 MD 2012.  Thus, at this juncture, it is impossible that any of the plaintiffs will be assessed costs and fees, as the court "shall deem just," as a result of the recent challenges to their nominating papers.

The complaint alleges that the application of Section 2911(b) and Section 2937 has severely impacted the plaintiffs and continues to impose severe burdens on them.  The plaintiffs and their nominees have allegedly been compelled under financial duress to withdraw nomination petitions submitted under Section 2911(b), despite their good faith belief the petitions included enough valid signatures, because they cannot afford to assume the risk of incurring costs pursuant to Section 2937.  It further alleges that the challenged provisions have thus prevented the plaintiffs from participating freely in Pennsylvania's past elections.

For example, the complaint alleges that following the 2004 election, Ralph Nader and his running mate, two independent candidates, were ordered to pay $81,102.19 in costs to the parties who challenged their nomination petitions pursuant to Section 2937.  See In re: Nomination Paper of Ralph Nader, 905 A.2d 450 (Pa. 2006).  In the 2006 election, the threat of incurring costs pursuant to Section 2937 caused several minor party candidates either to withhold or withdraw the nomination petitions required by Section 2911(b).  Only one minor party candidate for statewide office in 2006 was willing to submit and defend the nomination petitions, doing so based on his good faith belief that the 93,829 total signatures he submitted satisfied Section 2911(b)'s requirement of 67,070 valid signatures.  After his nomination petitions were successfully challenged in Commonwealth Court pursuant to Section 2937, Green Party candidate for Senate Carl Romanelli and his legal

counsel were assessed fees and costs of $80,407.56.  Mr. Romanelli was removed from the ballot.  In re: Rogers, 942 A.2d 915 (Pa. Commw. 2008); see also In re: Rogers, 914 A.2d 457, 463 (Pa. Commw. 2007) (finding that fees were warranted as Mr. Romanelli had been disingenuous with the court and failed to comply with the court's Order).

The complaint further alleges that Democratic candidates or their allies filed challenges against the Green Party of PA and its 2010 nominees, while Republican candidates or their allies filed challenges against the Libertarian Party of PA and its 2010 nominees.  In some cases, the challengers allegedly made explicit threats to seek costs pursuant to Section 2937, unless the plaintiffs immediately withdrew their nomination petitions.  For example, after challenging the Libertarian Party of PA's nomination petitions, an attorney representing three voters aided by and affiliated with the Pennsylvania Republican Party allegedly threatened to seek "$92,255 to $106,455" in fees and costs if the party and its nominees did not immediately withdraw their nomination petitions.  As a result of this threat, and on the advice of counsel, the Libertarian Party of PA and its nominees withdrew their nomination petitions the next day, August 17, 2010.

Similarly, a 2010 Green Party of PA nominee withdrew his nomination petitions after they were challenged by a Democratic nominee for the same office.  He did so despite his belief that the petitions included more than the amount of valid signatures required by Section 2911(b), because he was unable to assume the risk of incurring costs pursuant to Section 2937.  On August 13, 2010, the nominee filed a letter withdrawing his nomination petitions, which stated his belief that he had "no other choice," due to the

"financial risks" he faced if he defended the challenge and incurred costs pursuant to Section 2937.

A 2010 Constitution Party of PA nominee also declined to submit his nomination petitions in order to avoid the threat of incurring costs pursuant to Section 2937. Nomination petition challenges were also filed against "tea party" and independent candidates in 2010, causing them to withdraw rather than assume the risk of incurring such costs. As a result, no candidate for statewide office, except the Republican and Democratic nominees, appeared on Pennsylvania's 2010 general election ballot.

Finally, the complaint alleges that the Constitution Party of PA, the Green Party of PA, and the Libertarian Party of PA each have member-supporters who want to seek public office as their parties' nominees in future elections, but who cannot afford to incur costs pursuant to Section 2937. In addition, their member-supporters are allegedly increasingly reluctant to dedicate the time and resources necessary to conduct a successful petition drive, because they know that the filing of a challenge pursuant to Section 2937 may force the petitions to be withdrawn, whether or not they include enough valid signatures to comply with Section 2911(b). In fact, the plaintiffs attach several "declarations" of those involved with the minor parties which describe the general reluctance to participate in elections because of the assessments of costs and fees in previous elections.

The plaintiffs insist that because Pennsylvania law provides no alternative means for them to place their nominees on the general election ballot, Section 2911(b) and Section 2937 interfere with their core functions of presenting their candidates to the

electorate and building support for their parties' platforms, and with their goal of building viable minor political parties.

In their prayer for relief in the current case, the plaintiffs seek a declaratory judgment holding 25 P.S. § 2911(b) and 25 P.S. § 2937 unconstitutional as applied to the plaintiffs. Next, they seek a declaratory judgment holding 25 P.S. § 2937 unconstitutional on its face. Finally, the plaintiffs seek an injunction enjoining the defendants and any other official of the Commonwealth of Pennsylvania from enforcing the signature requirement imposed by 25 P.S. § 2911(b).

## II. LEGAL STANDARD

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007). A 12(b)(1) motion to dismiss may be treated as either a "facial or factual challenge to the court's subject matter jurisdiction." Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). Under a facial attack, the movant challenges the legal sufficiency of the claim and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." Id. In reviewing a factual attack, however, the challenge is to the actual alleged jurisdictional facts. Thus, a court is free in that instance to consider evidence outside the pleadings. Id. Finally, once a 12(b)(1) challenge is raised, the burden shifts and the plaintiff must demonstrate the existence of subject-matter jurisdiction. PBGC v. White, 998 F.2d 1192,

9

1196 (3d Cir. 2000). Here, the defendants bring a factual attack challenging the plaintiffs' Article III standing to bring this action and its ripeness, thereby stripping this court of its subject matter jurisdiction. Thus, to the extent that certain of the plaintiffs' jurisdictional allegations are challenged on the facts, those claims receive no presumption of truthfulness.

Under Rule 12(b)(6), a court must grant a motion to dismiss if the plaintiff fails "to state a claim upon which relief can be granted." In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the well-pleaded allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The plaintiffs' claims are brought under 42 U.S.C. § 1983, therefore this court has jurisdiction under 28 U.S.C. § 1331.

## III. DISCUSSION

Article III of the United States Constitution limits the power of federal courts to resolve cases or controversies. "A declaratory judgment or injunction can issue only when the constitutional standing requirements of a 'case' or 'controversy' are met." St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. U.S. Virgin Islands, 218 F.3d 232, 241 (3d Cir. 2000). Requests for declaratory relief cannot hinge solely on hypothetical or contingent questions. Id. The case or controversy requirement is met when "there is a

substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. Courts ensure that the case or controversy requirement is met by following several justiciability doctrines, including standing, ripeness, mootness, the political question doctrine, and the prohibition on advisory opinions. Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 143 (3d Cir. 2009). These justiciability doctrines "state fundamental limits on federal judicial power in our system of government." Allen v. Wright, 468 U.S. 737, 750 (1984). "The Article III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of these doctrines." Id.; see also Sprint Communications Co. v. APCC Servs., Inc., 554 U.S. 269, 273 (2008) (the "case-or-controversy requirement is satisfied only where a plaintiff has standing").

**A. Standing**

The doctrine of standing helps identify which disputes are justiciable under the case or controversy requirement. "As an incident to the elaboration of this bedrock [case or controversy] requirement, this court has always required that a litigant have "standing" to challenge the action sought to be adjudicated in the lawsuit." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982). At a minimum, three elements are needed to establish constitutional standing under Article III: (1) injury-in-fact, (2) causation (or traceability), and (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). An injury-in-fact is an invasion of a legally protected interested which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Id. at 560-561. Second, there must be a causal

connection between the injury and the offending conduct. Id. Thus, the injury must be "fairly traceable" to the challenged action of the defendant. Id. Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561.

The fact that this action includes a request for declaratory judgment does not eliminate the requirement of standing -- rather, "[a] declaratory judgment may issue only where the constitutional standing requirements of a justiciable controversy are satisfied." National Ass'n For Stock Car Auto Racing, Inc. v. Scharle, 184 Fed. Appx. 270, 274 (3d Cir. 2006); see also St. Thomas-St. John Hotel & Tourism Ass'n, 218 F.3d at 240 ("A declaratory judgment or injunction can issue only when the constitutional standing requirements of a case or controversy are met").

In the declaratory judgment context, the Third Circuit Court of Appeals has acknowledged that declaratory judgments are "frequently sought before injury has actually happened" and that in those cases standing requirements are satisfied when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 647 (3d Cir. 1990) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

Here, in considering the issue of standing, the identical analysis applies to all three counts in this complaint. In Count One, the plaintiffs request a declaratory judgment pursuant to 42 U.S.C. § 1983 holding 25 P.S. §§ 2911(b) and 2937 unconstitutional as applied. They allege that Section 2911(b) and Section 2937 violate their freedoms of

speech, petition, assembly and association for political purposes, and their right to due process of law, as guaranteed by the First and Fourteenth Amendments, by imposing or threatening to impose substantial financial burdens on them, without limitation, if they defend nomination petitions they are required by law to submit.

In Count Two of the complaint, the plaintiffs request a declaratory judgment pursuant to 42 U.S.C. § 1983 holding 25 P.S. §§ 2911(b) and § 2937 unconstitutional as applied. They allege that both sections violate their right to equal protection of law, as guaranteed by the Fourteenth Amendment, to place nominees on the general election ballot pursuant to Section 2911(b), by requiring them to submit nomination petitions with tens of thousands of valid signatures, when the Republican and Democratic candidates for statewide office must submit at most 2,000 signatures. The plaintiffs allege that they are further injured because private parties may challenge their nomination petitions, forcing them to assume the risk of incurring costs or to withdraw from the general election.

In Count Three, the plaintiffs request a declaratory judgment pursuant to 42 U.S.C. § 1983 holding 25 P.S. § 2937 unconstitutional on its face. They allege that Section 2937 chills their free exercise of their rights to speech, petition, assembly, and association for political purposes by requiring them to assume the risk of incurring substantial financial burdens if they defend nomination petitions they are required to submit pursuant to Section 2911(b).

"A plaintiff seeking a declaratory judgment must possess constitutional standing but need not have suffered 'the full harm expected.'" Khodara Environmental, Inc., v.

Blakey, 376 F.3d 187, 193 (3d Cir. 2004) (quoting The St. Thomas-St. John Hotel & Tourism Ass'n, 218 F.3d at 240). A plaintiff seeking a declaratory judgment "has Article III standing if 'there is substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Id.; see also Davis v. FEC, 554 U.S. 724, 734 (2008) ("the injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct").

When this complaint was filed, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 571 n.4 (1992) (the existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed), the injury the plaintiffs alleged could not be considered a "real, immediate, and direct injury." The complaint does not present a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." In fact, the threat of injury they allege is far from actual or imminent. For example, the plaintiffs allege that potential candidates' right to ballot access is chilled because of the *possibility* of assessed costs. Even though declarations were attached to the complaint indicating a reluctance to participate in the elections, the threat of assessed cost remains "conjectural or hypothetical."

I am also not persuaded by the plaintiffs' argument that because non-major party candidates have been assessed costs in the past, their future candidates will be assessed costs. In the two cases assessing sanctions against non-major party candidates, the Pennsylvania courts found that the candidates had participated in fraud, bad faith, or

similar inappropriate conduct prior to assessing costs. Nader, 905 A.2d at 455; Rogers, 942 A.2d 915, 930-931 (Pa. Super. 2008). The plaintiffs make no allegation a court will access costs against a candidate who acted in good faith. See Pa. Prison Soc'y v. Cortes, 508 F.3d 156, 167 (3d Cir. 2007) (the plaintiff failed to establish an injury-in-fact where it did not establish a sufficient likelihood it would be personally injured by the amendments). Thus, the plaintiffs' alleged injury is speculative, hypothetical, and conjectural, and not real, immediate, and direct as required for standing.

Even if such an injury were established here, there would be no causal connection between the injury and the challenged action of the defendants. To establish causation or traceability "[t]he plaintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury." Toll Bros., Inc., 555 F.3d at 142 (citing Lujan, 504 U.S. at 560). Unlike the injury-in-fact prong, which "focuses on whether the plaintiff suffered harm, . . . the traceability prong focuses on who inflicted that harm." Id. An indirect causal relationship will suffice if "there is 'a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant.'" Id. (quoting Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000)).

The hypothetical injury that the plaintiffs claim is that the possibility of being assessed costs and fees has made it more difficult to recruit candidates to place on the ballot, and to keep candidates from withdrawing their nominating petitions when challenged. The complaint and its attached declarations contain nothing more than

conclusory assertions blaming the imposition of fees and costs for the recruitment difficulties.

As the Court of Appeals for the Third Circuit stated in the minor parties' previous case:

> "The District Court could not conclude that the increased difficulty in recruitment is caused by the potential imposition of fees and not by a change in general public opinion, a change in the effectiveness of recruitment strategies or party leadership, or any multitude of other factors that could result in a minor party fielding a candidate for election on one year and failing to do so in a subsequent year. In other words, the District Court could not conclude 'that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury.'"

The Constitution Party of PA, et al. v. Pedro A. Cortes, et al., 433 Fed. Appx. 89, 93 (3d Cir. 2011). The court further stated that "any injury that occurred as a result of individuals withdrawing their nominating petitions was caused by those individuals' voluntary choice to withdraw their petitions, and not by any action on the part of defendants." Id. The same analysis still holds true here. Although the plaintiffs blame their recruitment difficulties on the possibility of being assessed fees and costs, they provide nothing more than conjecture and conclusory assertions as support. As the Third Circuit noted, "any multitude of other factors" could result in a potential candidate's reluctance to proceed in an election. Id. The declarations attached to the complaint refer to the Pennsylvania courts' previous assessments of costs and fees in recent years after challenges to the nomination papers, yet make no allegation that a court would access costs against a candidate who acted in good

faith.  See Pa. Prison Soc'y v. Cortes, 508 F.3d at 167.  Thus, even if an injury were established here, the plaintiffs have not established causation.

Having concluded that no injury or causation can be established here, I need not consider the issue of redressability or whether the plaintiffs' claims are ripe.  Constitution Party of PA, 433 Fed. Appx. at 93.  Without all three elements of standing, there is no case or controversy as is required by Article III of the United States Constitution.  Id.  Accordingly, I find that this court is without jurisdiction to hear this case, and will grant the defendants' motions to dismiss.

An appropriate Order follows.